09 -CV- 1554
(Corrected)

# EXHIBIT 1

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK
————————————————————————————X

TOWNE PARTNERS, LLC,

                    Plaintiff,

                                                                Index No. |00|08/2009

                                                                *Date of filing with clerk:*

          -against-                                             **SUMMONS**
                                                                *Plaintiff designates*
                                                                *New York County as the*
                                                                *place of trial.*
RJZM, LLC d/b/a ALL-MED & REHAB OF                              *The basis of venue is*
NEW YORK,                                                       *the residence of the Plaintiff.*

                    Defendant.
————————————————————————————X

          To the above-named defendant:

          YOU ARE HEREBY SUMMONED to Court to answer the complaint in this action and

to serve a copy of your answer on the Plaintiff's attorneys within twenty (20) days after the

service of this summons, exclusive of the day of service (or within thirty [30] days after the

service is complete if this summons is not personally delivered to you within the State of New

York); and in case of your failure to appear or answer, judgment will be taken against you by

default for the relief demanded in this complaint.

Dated: New York, New York
          January 6, 2009

                                                                Yours, etc.,

                                                                KUCKER & BRUH, LLP.
                                                                Attorneys for Plaintiff
                    NEW YORK                                    747 Third Avenue – Suite 12A
          COUNTY CLERK'S OFFICE                                New York, New York 10017
                                                                (212) 869-5030
                  JAN    6 2009!

              NOT COMPARED
              WITH COPY FILED

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK
————————————————————————X

TOWNE PARTNERS, LLC,

                Plaintiff,

                -against-

RJZM, LLC d/b/a ALL-MED & REHAB OF
NEW YORK,

                Defendant.
————————————————————————X

Index No. 100108/09

**COMPLAINT**

Plaintiff TOWNE PARTNERS LLC (the "Plaintiff" or "Towne Partners"), by its attorneys Kucker & Bruh, LLP, for its complaint against the Defendant RJZM, LLC d/b/a ALL-MED & REHAB OF NEW YORK (the "Defendant" or "RJZM") herein, alleges as follows:

1. At all relevant times, the Plaintiff Towne Partners was and is a limited liability company duly organized and existing under the laws of the State of New York.

2. At all relevant times, the Plaintiff Towne Partners was and is the owner and landlord of the land and commercial-use building known as and located at 423 East 138th Street, Bronx, New York, 10451 (the "Subject Premises").

3. Upon information and belief, at all relevant times, the Defendant RJZM was and is a limited liability company duly organized and existing under the laws of the State of New York.

### The Underlying Facts

4. Pursuant to a certain lease dated as of May 1, 2001 by and between the Plaintiff as Landlord and the Defendant as Tenant (the "Lease"), the Plaintiff leased the Subject Premises to the Tenant for a term of fifteen years. A copy of the Lease is annexed hereto as Exhibit A.

5. The Plaintiff instituted a summary eviction proceeding in the Civil Court of the City of New York to regain possession of the Subject Premises from the Defendant, under the caption Towne Partners LLC v. RJZM Corp., LLC, 423 East 138th Street, Bronx, New York 10451, L&T Index No. 0901485/05 (the "Eviction Proceeding"), upon the grounds of the Defendant's alleged non-payment of rent due under the Lease.

6. A judgment of possession of the Subject Premises in favor of the Plaintiff was entered in the Eviction Proceeding on July 5, 2006 (the "Judgment of Possession").

7. On July 6, 2006, the Defendant filed its petition for relief under chapter 11, title 11 of the United States Code, 11 U.S.C. §§ 101 et seq. (the "Bankruptcy Code"), commencing its proceeding for reorganization under the Bankruptcy Code under the caption In re: RJZM, LLC d/b/a All-Med & Rehabilitation of New York, chapter 11 case number 06-11535 (ALG) (the "Chapter 11 Case").

8. The Plaintiff and the Defendant entered into a stipulation in the Chapter 11 Case settling the various outstanding claims between them dated March 12, 2007 (the "Settlement Agreement"). A copy of the Settlement Agreement is annexed hereto as Exhibit B.

9. The Settlement Agreement was incorporated by reference and made part of a certain Amended Plan of Reorganization dated December 18, 2007 proposed by RJZM (the "Plan of Reorganization").

10. The Plan of Reorganization was confirmed by a certain Order of Confirmation of the Hon. Allan L. Gropper, United States Bankruptcy Judge, dated February 29, 2008 (the "Confirmation Order").

2

11. The Chapter 11 Case was closed by a certain Order Granting Final Decree of the Hon.Arthur J. Gonzalez, United States Bankruptcy Judge, dated June 30, 2008 (the "Final Decree").

12. The Settlement Agreement provides in relevant part:

1. The Debtor's time to assume or reject the lease for the 423 Premises is extended through and including the date of confirmation. The Plan of reorganization shall provide that the Debtor's time to assume or reject the Lease for the 423 Premises shall be further extended through and including August 31, 2008, subject to the terms herein. The Debtor has the right to continue in possession of the 423 Premises [the Subject Premises] through August 31, 2008, subject to the terms herein. . . . . If the Debtor has not assumed the 423 Lease and does not surrender possession of the 423 Premises by August 31, 2008, the Landlord shall be entitled, in addition to all of its other remedies at law and equity, to the exercise of its remedies in the event of holdover provided in Article 20 of the Lease, including the right to receive use and occupancy payments from the Debtor equal to one and a half (1 ½ ) times the applicable monthly rent, for each month and portion of each month that the Debtor holds over after August 31, 2008.

2. The Debtor shall comply with all monetary and non-monetary provisions of the 423 Lease, which is hereby incorporated by reference as though fully set forth herein . . . the monthly base rent thereafter . . . shall be as follows:

*        *        *        *        *        *

(c)  $47,553.17 per month for the period May 2008 through August 2008.

13. The Defendant did not assume the Lease, and did not vacate the Subject Premises until November, 2008.

14. Pursuant to Section 6.1 of the Lease, the Defendant as Tenant is required, at its own sole expense, to pay as additional rent all costs and expenses of complying with all legal Requirements (as defined by the Lease) pertaining to the Subject Premises, and any damages or fines resulting from the Tenant's failure to comply with such Requirements.

15. Pursuant to Section 17.2(A)(1) of the Lease, in the event of the expiration or termination of the Lease Term, "Tenant shall pay to Landlord all . . . items of Rental payable under this Lease by Tenant to Landlord to the date upon which this Lease and the Term shall

3

have expired and come to an end or to the date of re-entry upon the Premises by the Landlord, as the case may be."

16. Pursuant to Section 18.1 of the Lease, all expenses of litigation, including reasonable attorney's fees, resulting from any default of the Tenant of the terms of the Lease, are recoverable as damages with respect to such default.

17. Pursuant to Section 18.2 of the Lease, late fees in the amount of 6% (six per cent) of all amounts required to be paid by the Tenant under the Lease which are not paid when due, together with interest on such overdue amounts at the rate of 2% (two per cent) per annum over the prime rate charged by JP Morgan Chase Bank, N.A., shall accrue and be paid by the Tenant with respect to all such overdue amounts.

18. Pursuant to Article 20 of the Lease, if the Tenant does not vacate the Subject Premises at the termination of the Lease Term, it is liable to pay as liquidated damages an amount equal to 1½ times the amount of the Fixed Rent (as defined in the Lease) due for the last month of such Term, together with any and all other amounts due and payable by the Tenant pursuant to the Lease.

19. Pursuant to Section 28.5 of the Lease, the Defendant as Tenant is required to pay as additional rent all water and sewer charges pertaining to the Subject Premises.

20. Pursuant to Section 37.4 of the Lease, all rental obligations of the Tenant, including all additional rent, survive the termination of the Lease.

21. Pursuant to Section 37.5 of the Lease, all damages resulting from any default of the Tenant of the terms of the Lease are recoverable as additional rent under the Lease.

4

22. The Defendant as Tenant has failed to pay when due water and sewer charges payable as additional rent under the foregoing Lease provisions, which remain due and owing to date in the amount of $1,098.78, together with applicable late fees and interest.

23. The Defendant as Tenant has failed to pay when due a fine assessed by the Fire Department of New York City resulting from the Defendant's violation of the New York City Fire Code, payable as additional rent under the foregoing Lease provisions, which remains due and owing to date in the amount of $2,362.50, together with applicable late fees and interest.

24. The Defendant as Tenant has failed to pay when due the liquidated holdover damages of 1½ times Fixed Rent pursuant to Article 20 of the Lease in respect of the Defendant's use and occupancy of the Subject Premises for the month of November, 2008, which remains due and owing to date in the amount of $71,329.76, together with applicable late fees and interest.

## AS AND FOR A FIRST CAUSE OF ACTION (Breach of Contract)

25. The Plaintiff repeats and re-alleges each and every allegation contained in paragraphs 1 through 24 above, with the same force and effect as though fully set forth herein.

26. The Defendant has breached the Lease by its failure to pay when due the above-mentioned items of additional rent in respect of its pro rata share of water and sewer charges, and Fire Department fine, totaling $3,461.28, together with applicable late fees and interest.

27. The Defendant has further breached the Lease by its failure to pay when due the above-mentioned liquidated holdover damages in respect of the Defendant's use and occupancy of the Subject Premises for the month of November, 2008 in the amount of $71,329.76, together with applicable late fees and interest.

5

28. The Defendant is accordingly liable to the Plaintiff in respect of the above-mentioned breaches of the Lease in the aggregate amount of $74,791.04, together with applicable late fees, interest, and the costs and expenses, including reasonable attorney's fees, of this action.

### AS AND FOR A SECOND CAUSE OF ACTION (Use and Occupancy)

29. The Plaintiff repeats and re-alleges each and every allegation contained in paragraphs 1 through 28 above, with the same force and effect as though fully set forth herein.

30. The Defendant is liable to the Plaintiff for the unpaid value of the Defendant's use and occupancy of the Subject Premises in an amount to be determined at trial but in any event not less than $74,791.04, together with applicable late fees, interest, and the costs and expenses, including reasonable attorney's fees, of this action.

WHEREFORE, Plaintiff demands judgment against the Defendant as follows:

(i) on the First Cause of Action, in the aggregate amount of $74,791.04, together with applicable late fees, interest, and the costs and expenses, including reasonable attorney's fees, of this action;

(ii) on the Second Cause of Action, in an amount to be determined at trial but in any event not less than $74,791.04, together with applicable late fees, interest, and the costs and expenses, including reasonable attorney's fees, of this action; and

6

(iii) such other and further relief as the Court may deem just and proper.

Dated: New York, New York
      January 5, 2009

KUCKER & BRUH, LLP.
Attorneys for Plaintiff

By: _____

Abner T. Zelman
747 Third Avenue
New York, New York 10017
(212) 869-5030

7

# EXHIBIT A



AGREEMENT OF LEASE, made as of the/ ⁿᵈday of   *MAY*     , 2001 between Landlord and Tenant.

## WITNESSETH:

The parties hereto, for themselves, their legal representatives, successors and assigns, hereby covenant as follows:

## DEFINITIONS

"Affiliate" shall mean a Person, which shall (1) Control, (2) be under the Control of, or (3) be under common Control with the Person in question.

"Alterations" shall mean alterations, installations, improvements, additions or other physical changes (other than decorations) in or about the Premises.

"Applicable Rate" shall mean the lesser of (x) two (2) percentage points above the then current Base Rate, and (y) the maximum rate permitted by applicable law.

"Assessed Valuation" shall have the meaning set forth in Section 27.1 hereof.

"Assignment Statement" shall have the meaning set forth in Section 12.7 hereof.

"Bankruptcy Code" shall mean 11 U.S.C. Section 101 et seq., or any statute of similar nature and purpose.

"Base Rate" shall mean the rate of interest publicly announced from time to time to time by the Chase Manhattan Bank N.A., or its successors, as its "prime lending rate" (or other term as may be used by the Chase Manhattan Bank N.A., from time to time, for the rate presently referred to as its "prime lending rate").

"Building" shall mean all the buildings, equipment and other improvements and appurtenances of every kind and description now located or hereafter erected, constructed or placed upon the land and any and all alterations, and replacements thereof, additions thereto and substitutions therefor, know by the address of 423  East 138ᵗʰ Street, Bronx, New York 10451. This definition shall not include any personal property or equipment presently located at the Premises.

"Building Systems" shall mean the curtain wall, mechanical, gas electrical, sanitary, heating, air conditioning, condenser water, chilled water, ventilating, elevator, plumbing, life-safety and other service systems of the Building, but shall not include the Unit.

1



"Business Days" shall mean all days, excluding Saturdays, Sundays and all other days observed by either the State of New York or the Federal Government and by the labor unions servicing the Building as legal holidays.

"Commencement Date" shall mean the date of which the Lease commences.

"Control" or "control" shall mean ownership of more than fifty percent (50%) of the outstanding voting stock of a corporation or other majority equity and control interest if not a corporation and the possession of power to direct or cause the direction of the management and policy of such corporation or other entity, whether through the ownership of voting securities, by statute or according to the provisions of a contract.

"Deficiency" shall have the meaning set forth in Section 17.2 hereof.

"Escalation Date" shall have the meaning set forth in Section 1.1 hereof.

"Escalation Rent" shall mean the Tax Payment.

"Event of Default" shall have the meaning set forth in Section 16.1 hereof.

"Expiration Date" shall mean the Fixed Expiration Date or such earlier or later date on which the Term shall end pursuant to any of the terms, conditions or covenants of this Lease or pursuant to law.

"Fixed Expiration Date" shall have the meaning set forth in Section 1.1 hereof.

"Fixed Rent" shall have the meaning set forth in Section 1.1 hereof.

"Governmental Authority (Authorities)" shall mean the United States of America, the State of New York, the City of New York, any political subdivision thereof and any agency, department, commission, board, bureau or instrumentality of any of the foregoing, or any quasi-governmental authority , now existing or hereafter created, having jurisdiction over the Real Property or any portion thereof, the services to be provided by Tenant at the Premises or the operation of facilities of the nature of the facility to be operated by Tenant at the Premises.

"HVAC" shall mean heat, ventilation and air conditioning.

"HVAC Systems" shall mean the Tenant's system for providing HVAC to the Premises.

"Immediately Preceding Rent" shall have the meaning set forth in Section 1.1 hereof.

"Indemnities" shall mean Landlord, the partners, members or managers

2

comprising Landlord and its and their partners, members, managers, shareholders, officers, directors, employees, agents and contractors, Lessors and Mortgagees.

"Initial Alterations" shall mean the Alterations to be made by Landlord to initially prepare the Premises for Tenant's occupancy.

"Landlord", on the date as of which this Lease is made, shall mean Towne Partners, LLC, a New York limited liability company, having an office 28 Amelia Street, North Caldwell, New Jersey 07006, but thereafter, "Landlord" shall mean only the fee owner of the Real Property or if there shall exist a Superior Lease, the tenant thereunder.

"Lessor(s)" shall mean a lessor under a Superior Lease.

"Mortgage(s)" shall mean any trust indenture or mortgage which may now or hereafter affect the Real Property, the Building or any Superior Lease and the leasehold interest created thereby, and all renewals, extensions, supplements, amendments, modifications, consolidations and replacements thereof or thereto, substitutions therefor, and advances made thereunder.

"Mortgagee(s)" shall mean any trustee, mortgagee or holder of a Mortgage.

"Operation of the Property" shall mean the maintenance, repair and management of the Real Property and the curbs, sidewalks and areas adjacent thereto.

"Parties" shall have the meaning set forth in Section 37.2 hereof.

"Partner" or "partner" shall mean any partner of Tenant, any employee of a professional corporation which is a partner comprising Tenant, and any shareholder of Tenant if Tenant shall become a professional corporation.

"Person(s) or person(s)" shall mean any natural person or persons, a partnership, a corporation and any other form of business or legal association or entity.

"Premises" shall mean, subject to the provisions of Section 14.3 hereof, the portions of the Building as set forth on the floor plans attached hereto and made a part hereof as Exhibit " A" (other than the portions of the Building marked with diagonal lines).

"Real Property" shall mean the Building, together with the plot of land upon which it stands.

"Renew. Notice" shall have the meaning set forth in Section 31.1 hereof.

"Renewal Option" shall have the meaning set forth in Section 31.1 hereof.

3

"Renewal Term" shall have the meaning set forth in Section 31.1 hereof.

"Rental" shall mean and be deemed to include Fixed Rent, Escalation Rent, all additional rent and any other sums payable by Tenant hereunder.

"Requirements" shall mean all present and future laws, rules, orders, ordinances, regulations, statutes, requirements, codes and executive orders, extraordinary as well as ordinary, of all Governmental Authorities now existing or hereafter created, and of any and all of their departments and bureaus, and of any applicable fire rating bureau, or other body exercising similar functions, affecting the Real Property or any portion thereof, or any street, avenue or sidewalk comprising a part of or in front thereof or any vault in or under the same, or requiring removal of any encroachment, or affecting the maintenance, use or occupation of the Real Property or any portion thereof.

"Rules and Regulations" shall mean the rules and regulations annexed hereto and made a part hereof as Schedule A, and such other and further rules and regulations as Landlord or Landlord's agents may, from time to time adopt on such notice to be given as Landlord may elect, subject to Tenant's right to dispute the reasonableness thereof as provided in Article 8 hereof.

"Security Agreement" shall have the meaning set forth in Section 3.1 hereof.

"Superior Lease(s)" shall mean all ground or underlying leases of the Real Property or the Building and all renewals, extensions, supplements, amendments and modifications thereof.

"Taxes" shall have the meaning set forth in Section 27.1 hereof.

"Tax Payment" shall have the meaning set forth in Section 27.2 hereof.

"Tax Statement" shall have the meaning set forth in Section 27.1 hereof.

"Tax Year" shall have the meaning set forth in Section 27.1 hereof.

"Tenant" on the date as of which this Lease is made, shall mean RJZM Corp., LLC, having an office at 423 East 138th Street, Bronx, New York, but thereafter "Tenant" shall mean only the tenant under this Lease at the time in question; provided, however, that the originally named tenant and any assignee of this Lease shall not be released from liability hereunder in the event of any assignment of this Lease except as provided herein.

"Tenant Statement" shall have the meaning set forth in Section 12.6 hereof.

"Tenant's Property" shall mean Tenant's movable fixtures and movable partitions, telephone and other equipment, furniture, furnishings, decorations and other items of personal property.

4



"Tenant's Share" shall mean eighty (80%) percent as the same may be increased or decreased pursuant to the terms hereof.

"Term" shall mean a term, which shall commence on the Commencement Date and shall expire on the Expiration Date.

"Unavoidable Delays" shall have the meaning set forth in Article 25 hereof, shall have the meaning set forth in Section 28.2 hereof.

"Utility Additional Rent" shall have the meaning set forth in Section 13.3 hereof.



## ARTICLE 1
## DEMISE, PREMISES, TERM, RENT

Section 1.1. Landlord hereby leases to Tenant and Tenant hereby hires from Landlord the Premises for the Term to commence on the Commencement Date which the parties hereto have set as May 1, 2001 and to end on the date immediately preceding the fifteenth (15th) anniversary of the Commencement Date (the "Fixed Expiration Date"), at an annual rent (the "Fixed Rent")

of:

(i)     Four Hundred Ninety Eight Thousand ($498,000.) Dollars per annum for the period commencing on the Commencement Date and ending two years from the Commencement Date ($41,500.00 per month), and

(ii)     commencing on the third year of the term of this Lease, and on each ensuing anniversary of such date (each, an "Escalation Date") the Fixed Rent per annum shall be an amount equal to (x) the Fixed Rent per annum payable on the date immediately preceding the applicable Escalation Date (as the same shall have been previously increased by reason of the application of this Section 1.1 (ii) (the "Immediately Preceding Rent"), plus (y) a three (3%) percent increase in the Immediately Preceding Rent.

(iii)     The above Section 1.1 is subject to the provisions of Article 42, 43, 44 and 45 hereof.

Section 1.2. Tenant agrees to pay Fixed Rent in lawful money of the United States which shall be legal tender in payment of all debts and dues, public and private, at the time of payment, in equal monthly installments in advance, on the first (1st) day of each calendar month during the Term commencing on the Commencement Date, at the office of Landlord or such other place as Landlord may designate, without any set-off, offset, abatement or deduction whatsoever, except as otherwise expressly set forth in the Lease, and except that Tenant shall pay the first full monthly installment on the execution hereof.

## ARTICLE 2
## USE AND OCCUPANCY

Section 2.1. Tenant shall use and occupy the Premises as medical offices and ancillary medical care and for no other purpose. Tenant shall have access to the Premises 24 hours per day, 365 days per year, subject to the provisions of this Lease and all applicable governmental laws, if any.

Section 2.2. (A) Tenant shall not use the Premises or any part thereof, or permit the Premises or any part thereof to be used, (1) for the business of photographic, multililth or multigraph reproductions or offset printing, except in connection with, either directly or indirectly, Tenant's own business and/or activities, , .) for a banking, trust company, depository, guarantee or safe deposit business, (3) as a avings bank, a savings and loan association, or as a loan company, (4) for the sale of travelers checks, money orders,

6



Authorities, it being agreed that all filings with Governmental Authorities to obtain such permits, approvals and certificates shall be made, at Tenant's expense, by a Person designated by Landlord, provided said Person shall charge commercially competitive rates, and (iii) furnish to Landlord duplicate original policies or certificates thereof of worker's compensation ( covering all persons to be employed by Tenant, and Tenant's contractors and subcontractors in connection with such Alteration) and comprehensive public liability (including property damage coverage) insurance in such form, with such companies, for such periods and in such amounts as Landlord may reasonably approve, naming Landlord and its agents, any Lessor and any Mortgagee, as additional insureds. Upon completion of such Alteration, Tenant, at Tenant's expense, shall obtain certificates of final approval of such Alteration required by any Governmental Authority and shall furnish Landlord with copies thereof, together with the "as-built" plans and specifications for such Alterations, it being agreed that all filings with Governmental Authorities to obtain such permits, approvals and certificates shall be made, at Tenant's expense, by a Person designated by Landlord, provided said Person shall charge commercially competitive rates. All Alterations shall be made and performed substantially in accordance with the plans and specifications therefor as approved by Landlord, all Requirements, the Rules and Regulations, and all rules and regulations relating to Alterations reasonably promulgated by Landlord. All materials and equipment to be incorporated in the Premises as a result of any Alterations or a part thereof shall be first quality and no such materials or equipment (other than Tenant's Property) shall be subject to any lien, encumbrance, chattel mortgage or title retention or security agreement. In addition, no Alteration shall be undertaken prior to Tenant's delivering to Landlord either (i) a performance bond and labor and materials payment bond (issued by a surety company and in form reasonably satisfactory to Landlord), each in an amount equal to 120% of the cost of such Alteration (as reasonably estimated by Landlord's architect, engineer, or contractor). The Landlord and Tenant agree that the cost of said bond will be borne equally by the Landlord and Tenant, or (ii) such other security as shall be reasonably satisfactory to Landlord or required by any Mortgagee or Lesser. If, as a result of any Alterations performed by Tenant any alterations, installations, improvements, additions or other physical changes are required to be performed or made to any portion of the Building or the Real Property other than the Premises in order to comply with any Requirement(s), which alterations, installations, improvements, additions or other physical changes would not otherwise have had to be performed or made pursuant to applicable Requirement(s) at such time, Landlord, at Tenant's sole cost and expense, may perform or make such alterations, installations, improvements, additions or other physical changes and take such actions as Landlord shall deem reasonably necessary and Tenant, within five (5) days after demand therefor by Landlord, shall provide Landlord with such security as Landlord shall reasonably require, in an amount equal to 120% of the cost of such alterations, installations, improvements, additions or other physical changes, as reasonably estimated by Landlord's architect, engineer or contractor, or in the alternative the Tenant may post a bond guaranteeing such work. All Alteration(s) of a nature that are customarily supervised by an architect or which are required to be supervised by an architect pursuant to any Requirement shall be performed only under the supervision of an independent licensed architect approved by Landlord, which approval shall not be unreasonably withheld.

8



(2)     If Landlord shall fail to disapprove Tenant's final plans and specifications for any Alteration within fifteen (15) Business Days, or within ten (10) Business Days (with respect to any resubmission of disapproved plans), after Landlord's receipt thereof (provided in each instance the same shall be of a scope and scale reasonably susceptible of review in such periods), Landlord shall be deemed to have approved such plans and specifications. To the extent Landlord's consent is required, Landlord reserves the right to disapprove any plans and specifications in part, to reserve approval of items shown thereon pending its review and approval of other plans and specifications, and to condition its approval upon Tenant making revisions to the plans and specifications or supplying additional information. Any review or approval by Landlord of any plans and/or specifications or any preparation or design of any plans by Landlord's architect or engineer (or any architect or engineer designated by Landlord) with respect to any Alteration is solely for Landlord's benefit, and without any representation or warranty whatsoever to Tenant or any other Person with respect to the compliance thereof with any Requirements, the adequacy, correctness or efficiency thereof or otherwise.

(3)     Tenant covenants and agrees that no security agreement, whether by way of conditional sales agreement, chattel mortgage or other title retention or instrument of similar import (a "Security Agreement") shall be placed upon any improvement made by Tenant to the Premises without Landlord's prior written consent, in Landlord's sole discretion. In the event that any of Tenant's Property are purchased or acquired by Tenant subject to a Security Agreement, Tenant undertakes and agrees (i) that no Security Agreement or Uniform Commercial Code filing statement shall be permitted to be filed as a lien against the Premises, the Building or the Real Property, and (ii) to cause to be inserted in any Security Agreement the following provisions: "Notwithstanding anything to the contrary contained herein, this chattel mortgage, conditional sales agreement, title retention agreement or security agreement shall not be create or be filed as a lien against the land, building and improvements comprising the real property in which the goods, machinery, equipment, appliances or other personal property covered hereby are to be located or installed." If any such lien, based on a Security Agreement or Uniform Commercial Code filing statement, is filed against the Premises, the Building or the Real Property, Tenant shall, within ten (10) days following notice thereof from Landlord, cause such lien or notice to be removed or discharged at Tenant's cost and expense, and Tenant's failure to do so shall constitute a breach of a material provision of this Lease.

(C)     (1) Tenant shall be permitted to perform Alterations at any time, provided that such performance shall not violate any Requirements and further provided that such work shall not unreasonably interfere with or interrupt the operation and maintenance of the Building or unreasonably interfere with or interrupt the use and occupancy of the Building by other tenants in the Building. Any Alteration which will so unreasonably interfere with or interrupt the operation and maintenance of the Building or unreasonably interfere with or interrupt the use and occupancy by other tenants of the Building shall be performed at such times and in such manner as Landlord shall reasonably designate.

(2) All Tenants' Property installed by Tenant and all Alterations



in and to the Premises, which may be made by Tenant at its own cost and expense prior to and during the Term, shall remain the property of Tenant. Upon the Expiration Date, all Tenant's Property shall be removed from the Premises and, at Landlord's option, exercised on not less than ninety (90) days prior written notice, on the Expiration Date such Alterations, if any, as are designated in Landlord's notice shall be removed from the Premises and the balance of the Alterations shall remain in the Premises and become the property of Landlord. Tenant shall repair and restore in a good and workerlike manner to good condition any damage to the Premises or the Building caused by such removal.

(D)(1) All Alterations shall be performed, except for Landlord's initial work to be performed, at Tenant's sole cost and expense, by contractors, subcontractors or mechanics who are licensed, bondable and are otherwise approved by Landlord in its reasonable discretion. Prior to making an Alteration, at Tenant's request, Landlord shall furnish Tenant with a list of contractors who may perform Alterations to the Premises on behalf of Tenant. If Tenant engages any contractor set forth on the list, Tenant shall not be required to obtain Landlord's consent for such contractor unless, prior to the entering into a contract with such contractor, Landlord shall notify Tenant that such contractor has been removed from the list.

(2) Notwithstanding the foregoing, with respect to any portion of any Alteration involving a tie into any Building System, (i) Tenant shall select a contractor from a list of approved contractors furnished by Landlord to Tenant (containing at least three (3) contractors) and (ii) the portion of the Alteration shall, at Tenant's cost and expense, be designed by Landlord's engineer for the relevant Building System.

(E) Any mechanic's lien filed against the Premises or the Real Property for work claimed to have been done for, or materials claimed to have been furnished to, Tenant shall be discharged by Tenant within thirty (30) days after Tenant shall have received notice thereof (or such shorter period if required by the terms of any Superior Lease or Mortgage), at Tenant's expense, by payment or filing the bond required by law. Tenant shall not, at any time prior to or during the Term, directly or indirectly employ, or permit the employment of, any contractor, mechanic or laborer in the Premises, whether in connection with any Alteration or otherwise, if such employment would interfere or cause any conflict with other contractors, mechanics or laborers engaged in the construction, maintenance or operation of the Building by Landlord, Tenant or others, or of any adjacent property owned by Landlord. In the event of any such interference or conflict, Tenant, upon demand of Landlord, shall cause all contractors, mechanics or laborers causing such interference or conflict to leave the Building immediately.

## ARTICLE 4
## REPAIRS-FLOOR LOAD

Section 4.1. Tenant, at Tenant's sole cost and expense, shall operate, maintain and make all necessary nonstructural repairs to the Building, the part of the Building Systems which provide service to the Premises, the elevator in the Building, and the interior

10



public portions of the Building. Notwithstanding the foregoing, Tenant shall not be responsible for any repairs to the portion of the Building currently leased to 24/7 Laundries, Inc. and exterior of the Building, except to the extent such repairs are required due to the acts, omissions or negligence of Tenant, its agents, employees, officers, contractors, visitors or invitees. In addition, Tenant, at Tenant's sole cost and expense, shall take good care of the Premises and the fixtures, equipment and appurtenances therein and the distribution systems and shall make all nonstructural repairs thereto (including, without limitation, the exterior and interior of all windows, plate glass, showcase windows, doors, doorframes and bucks) as and when needed to preserve them in good working order and condition. Tenant shall not be responsible for preexisting defects, structural repairs and repairs to facade of the Building except to the extent such repairs or replacements are required due to acts, omissions or negligence of Tenant, its agents, employees, officers contractors, visitors or invitees. Tenant, at Tenant's sole cost and expense, shall replace Tenant's Property when desirable or necessary in accordance with prudent commercial practices consistent with the first-class operation of the Premises for the uses set forth in Section 2.1 hereof. Notwithstanding the foregoing, all damage or injury to the Premises or to any other part of the Building and Building Systems, or to its fixtures, equipment and appurtenances, whether requiring structural or nonstructural repairs, caused by or resulting from carelessness, omission, neglect or improper conduct of, or Alterations made by, Tenant, Tenant's agents, employees, invitees or licensees, shall be repaired at Tenant's sole cost and expense, by Tenant to the reasonable satisfaction of Landlord. It is the intention of this Lease that Tenant shall be solely responsible, at its sole cost and expense, for all expenses of operations, repairs and replacements to the entire Building, except to the extent any repair is required (i) due to the acts of Landlord, its agents, employees or contractors or any other tenant of the Building, or (ii) with respect to the space currently leased to 24/7 Laundries, Inc. All of the aforesaid repairs shall be of first quality and first class, and shall be made in accordance with the provisions of Article 3 hereof. If Tenant fails after ten (10) days' notice (or such shorter period as Landlord may be permitted pursuant to any Superior Lease or Mortgage or such shorter period as may be required due to an emergency) to proceed with due diligence to make repairs required to be made by Tenant, the same may be made by Landlord at the expense of Tenant, and the expenses thereof incurred by Landlord, with interest thereon at the Applicable Rate, shall be forthwith paid to Landlord as additional rent after rendition of a bill or statement therefor . Tenant shall give Landlord prompt notice of any defective condition in the Building or in any Building System, located in, servicing or passing through the Premises. Landlord shall assign to Tenant all guaranties received by Landlord in connection with the initial construction of the Building to the extent such guaranties relate to Tenant's repair obligations hereunder.

Section 4.2. Tenant shall not place a load upon any floor of the Premises exceeding that permitted by the certificate of occupancy for the Building. All work in connection therewith shall comply with all Requirements and the Rules and Regulations, and shall be done during such hours as Landlord may reasonably designate. Business machines, mechanical equipment and medical machinery shall be placed and maintained by Tenant at Tenant's expense in settings sufficient in Landlord's reasonable judgment to absorb and minimize vibration, noise and annoyance, and shall be shielded as required by



Requirements. Except as expressly provided in this Lease, there shall be no allowance to Tenant for a diminution of rental value and no liability on the part of Landlord by reason of inconvenience, annoyance or injury to business arising from Landlord, Tenant or others making, or failing to make, any repairs, alterations, additions or improvements in or to any portion of the Building or the Premises, or in or to fixtures, appurtenances or equipment thereof.

Section 4.3. Landlord shall use its reasonable efforts to minimize interference with Tenant's use and occupancy of the Premises in making any repairs, alterations, additions or improvements; provided, however, that Landlord shall have no obligation to employ contractors or labor at so-called overtime or other premium pay rates or to incur any other overtime costs or expenses whatsoever. In the event that Tenant shall be required by Owner to temporally shut down all or part of the medical facility in order to enable Owner to perform this or any of its required work, the Tenant will do so at the reasonable request of the Owner. Owner agrees it will use its best efforts in minimizing any inconvenience or shut down time to Tenant.

Section 4.4. Landlord will maintain the exterior of the Building.

## ARTICLE 5
## WINDOW CLEANING

Tenant shall not clean, nor require, permit, suffer or allow any window in the Premises to be cleaned from the outside in violation of any State or local law or any other Requirement, or of the rules of the Board of Standards and Appeals, or of any other board or body having or asserting jurisdiction.

## ARTICLE 6
## REQUIREMENTS OF LAW

Section 6.1. Tenant, at its sole cost and expense shall comply with all Requirements applicable to the Premises, including, without limitation, those applicable to the making of any Alterations therein or the result of the making thereof and those applicable by reason of the nature or type of business operated by Tenant in the Premises, except Landlord's responsibilities set forth in this Lease. Tenant shall obtain and keep in full force and effect at all times all permits and licenses required for the operation of the Premises. Tenant shall not do or permit to be done any act or thing upon the Premises which will invalidate or be in conflict with a standard "all-risk" insurance policy; and shall not do, or permit anything to be done in or upon the Premises, or bring or keep anything therein, except as now or hereafter permitted by the New York City Fire Department, New York Board of Fire Underwriters, the Insurance Services Office or other authority having jurisdiction and then only in such quantity and manner of storage as not to increase the rate for fire insurance applicable to the Building, or use the Premises in a manner (as opposed to mere use as general "office" use) which shall increase the rate of fire insurance on the Building or on property located therein, over that in similar type buildings or in effect on the Commencement Date. If by reason of



Tenant's failure to comply with the provisions of this Article, the fire insurance rate shall be higher than it otherwise would be, then Tenant shall desist from doing or permitting to be done any such act or thing and shall reimburse Landlord, as additional rent hereunder, for that part of all fire insurance premiums thereafter paid by Landlord which shall have been charged because of such failure by Tenant, and shall make such reimbursement upon demand by Landlord. In any action or proceeding wherein Landlord and Tenant are parties, a schedule or "make up" of rates for the Building or the Premises issued by the parties, a schedule or "make up" of rates for the Building or the Premises issued by the Insurance Services Office, or other body fixing such fire insurance rates, shall be conclusive evidence of the facts therein stated and of the several items and charges in the fire insurance rates then applicable to the Building.

Section 6.2. Tenant, at its sole cost and expense and after notice to Landlord, may contest by appropriate proceedings prosecuted diligently and in good faith, the legality or applicability of any Requirement affecting the Premises, provided that (a) Landlord ( or any Indemnitee) shall not be subject to imprisonment or to prosecution for a crime, nor shall the Real Property or any part thereof be subject to being condemned or vacated, nor shall the certificate of occupancy for the Premises or the Building be suspended or threatened to be suspended by reason of non-compliance or by reason of such contest; (b) before the commencement of such contest, if Landlord or any Indemnitee may be subject to any civil fines or penalties or other criminal penalties or if Landlord may be liable to any independent third party as a result of such noncompliance, Tenant shall furnish to Landlord either (i) a bond of a surety company satisfactory to Landlord, in form and substance reasonably satisfactory to Landlord, and in an amount equal to one hundred twenty percent (120%) of the sum of (A) the cost of such compliance, (B) the criminal or civil penalties or fines that may accrue by reason of such non-compliance (as reasonably estimated by Landlord), and (C) the amount of such liability to independent third parties (as reasonably estimated by Landlord), and shall indemnify Landlord (and any Indemnitee) against the cost of such compliance and liability resulting from or incurred in connection with such contest or non-compliance (except that Tenant shall not be required to furnish such bond to Landlord if it has otherwise furnished any similar bond required by law to the appropriate Governmental Authority and has named Landlord as a beneficiary thereunder) or (ii) other security reasonably satisfactory to Landlord; (c) such non-compliance or contest shall not constitute or result in a violation ( either with the giving of notice or the passage of time or both) of the terms of any Mortgage or Superior Lease, or if such Superior Lease or Mortgage shall condition such non-compliance or contest upon the taking of action or furnishing of security by Landlord, such action shall be taken or such security shall be furnished at the expense of Tenant; and (d) Tenant shall keep Landlord regularly advised as to the status of such proceedings. Without limiting the applicability of the foregoing, Landlord (or any Indemnitee) shall be deemed subject to prosecution for a crime if Landlord (or any Indemnitee), a Lesser, a Mortgagee or any of their officers, directors, members, managers, partners, shareholders, agents or employees is charged with a crime of any kind whatsoever, unless such charges are withdrawn ten (10) days before Landlord (or any Indemnitee), such Lesser or such Mortgagee or such officer, director, partner, shareholder, agent or employee, as the case may be, is required to plead or answer thereto.

13



## ARTICLE 7
## TENANT CONTRIBUTION TOWARDS IMPROVEMENTS

Tenant has deposited with Landlord the nonrefundable contribution of $83,000.00 to be applied by the Landlord in the Landlord's sole discretion towards the leasehold improvements required by Tenant.

## ARTICLE 8
## RULES AND REGULATIONS

Intentionally omitted.

## ARTICLE 9
## INSURANCE, PROPERTY LOSS OR DAMAGE; REIMBURSEMENT

Section 9.1. (A) Any Building employee to whom any property shall be entrusted by or on behalf of Tenant shall be deemed to be acting as Tenant's agent with respect to such property and neither Landlord nor its agents shall be liable for any damage to property of Tenant or of others entrusted to employees of the Building, nor for the loss of or damage to any property of Tenant by theft or otherwise. Neither Landlord nor its agents shall be liable for any injury (or death) to persons or damage to property, or interruption of Tenant's business, resulting from fire or other casualty; nor shall Landlord or its agents be liable for any such injury (or death) to persons or damage caused by other tenants or persons in the Building or caused by construction of any private, public or quasi-public work; nor shall Landlord be liable for any injury (or death) to persons or damage to property or improvements, or, except as otherwise provided in this Lease, interruption of Tenant's business, resulting from any latent defect in the Premises or in the Building (provided that the foregoing shall not relieve Landlord from its obligations, if any, to repair such latent defect pursuant to the provisions of Article 4 hereof). Anything in this Article 9 to the contrary notwithstanding, except as set forth in Articles 4, 10, 13, 28 and 35 of this Lease and otherwise as expressly provided herein, Landlord shall not be relieved from responsibility directly to Tenant for any loss or damage caused directly to Tenant wholly or in part by the negligent acts or omissions of Landlord. Nothing in the foregoing sentence shall affect any right of Landlord to the indemnity from Tenant to which Landlord may be entitled under Article 35 hereof in order to recoup for payments made to compensate for losses of third parties.

(B) Tenant shall immediately notify Landlord of any fire or accident in the Premises.

Section 9.2. Tenant shall obtain and keep in full force and effect (i) an "all risk" insurance policy (including, without limitation, fire, extended coverage, vandalism, water and sprinkler damage) for Tenant's improvements, betterments (including, without limitation, all Alterations), personalty and Tenant's Property at the Premises (including, without limitation, all medical equipment) in an amount equal to one hundred percent (100%) of the replacement value thereof, (ii) a policy of commercial general liability and

14



property damage insurance on an occurrence basis, with a broad form contractual liability endorsement, (iii) plate glass insurance on a replacement cost basis, and (iv) business interruption insurance insuring interruption or stoppage of Tenant's business at the Premises for a period of not less than one (1) year. Such policies shall provide that Tenant is named as the insured. Landlord, Landlord's managing agent, Landlord's agents and any Lessors and any Mortgagees (whose names shall have been furnished to Tenant) shall be added as additional insureds, as their respective interests may appear, with respect to the insurance required to be carried pursuant to clauses (i), (ii) and (iii) above. Such policy with respect to clause (ii) above shall include a provision under which the insurer agrees to indemnify, defend and hold Landlord, Landlord's managing agent, Landlord's agents and such Lessors and Mortgagees harmless from and against, subject to the limits of liability set forth in this Section 9.2, all cost, expense and liability arising out of, or based upon, any and all claims, accidents, injuries and damages mentioned in Article 35. In addition, the policy required to be carried pursuant to clause (ii) above shall contain a provision that (a) no act or omission of Tenant shall affect or limit the obligation of the insurer to pay the amount of any loss sustained and (b) the policy shall be non-cancelable with respect to Landlord, Landlord's managing agent, Landlord's agents and such Lessors and Mortgagees (whose names and addresses shall have been furnished to Tenant) unless thirty-(30) days' prior written notice shall have been given to Landlord by certified mail, return receipt requested, which notice shall contain the policy number and the names of the insured and additional insureds. In addition, upon receipt by Tenant of any notice of cancellation or any other notice from the insurance carrier which may adversely affect the coverage of the insureds under such policy of insurance, Tenant shall immediately deliver to Landlord and any other additional insured hereunder a copy of such notice. The minimum amounts of liability under the policy of insurance required to be carried pursuant to clause (ii) above shall be a combined single limit with respect to each occurrence in an amount of $10,000,000 for injury (or death) to persons and damage to property , which amount shall be increased from time to time to that amount of insurance which in Landlord's reasonable judgment is then being customarily required by prudent landlords of non-institutional first class buildings in New York City. All insurance required to be carried by Tenant pursuant to the terms of this Lease shall be effected under valid and enforceable policies issued by reputable and independent insurers permitted to do business in the State of New York, and rated in Best's Insurance Guide, or any successor thereto (or if there be none, an organization having a national reputation) as having a general policyholder rating of "A" and a financial rating of at least "XIII".

    Section 9.3. On or prior to the Commencement Date, Tenant shall deliver to Landlord appropriate certificates of insurance, including evidence of waivers of subrogation required pursuant to Section 10.5 hereof, required to be carried by Tenant pursuant to this Article 9. Evidence of each renewal or replacement of a policy shall be delivered by Tenant to Landlord at least twenty (20) days prior to the expiration of such policy.

    Section 9.4. Tenant acknowledges that Landlord shall not carry insurance on, and shall not be responsible for damage to, Tenant's Property or Alterations, and that Landlord shall not carry insurance against, or be responsible for any loss suffered by

Tenant due to, interruption of Tenant's business, unless covered by Landlord's insurance.

## ARTICLE 10
## DESTRUCTION-FIRE OR OTHER CAUSE

Section 10.1. (A) If the Premises shall be damaged by fire or other casualty I Landlord, at its sole cost and expense, shall diligently repair all damages, including without limitation, damage to the floor and ceiling slabs of the Premises, the demising walls of the Premises and the Building Systems, all to the condition which existed on the date of such fire or casualty, with such modifications as shall be required in order to comply with all Requirements of Law. Landlord shall have no obligation to repair any damage to, or to replace, any Alterations performed by Tenant or Tenant's Property. Tenant's obligations to pay all Fixed Rent and all other items of Rental shall continue in full force and effect and shall not abate during the period the Premises is affected by any such fire or other casualty or during the period of the repair of the Premises after any such fire or other casualty. Landlord shall commence its repairs promptly after the date of any damage, and thereafter diligently and continuously prosecute the same to completion.

Section 10.2. The parties hereto shall procure an appropriate clause in, or endorsement on, any fire or extended coverage insurance covering the Premises, the Building and personal property, fixtures and equipment located thereon or therein, pursuant to which the insurance companies waive subrogation or consent to a waiver of right of recovery and having obtained such clauses or endorsements of waiver of subrogation or consent to a waiver of right of recovery, will not make any claim against or seek to recover from the other for any loss or damage to its property or the property of others resulting from fire or other hazards covered by such fire and extended coverage insurance, provided, however, that the release, discharge, exoneration and covenant not to sue herein contained shall be limited by and be coextensive with the terms and provisions of the waiver of subrogation clause or endorsements or clauses or endorsements consenting to a waiver of right of recovery .If the payment of an additional premium is required for the inclusion of such waiver of subrogation provision, each party shall advise the other of the amount of any such additional premiums and the other party at its own election may, but shall not be obligated to, pay the same. If such other party shall not elect to pay such additional premium, the first party shall not be required to obtain such waiver of subrogation provision. If either party shall be unable to obtain the inclusion of such clause even with the payment of an additional premium, then such party shall attempt to name the other party as an additional insured (but not a loss payee) under the policy. If the payment of an additional premium is required for naming the other party as an additional insured (but not a loss payee), each party shall advise the other of the amount of any such additional premium and the other party at its own election may, but shall not be obligated to, pay the same. If such other party shall not elect to pay such additional premium or if it shall not be possible to have the other party named as an additional insured (but not loss payee), even with the payment of an additional premium, then (in either event) such party shall so notify the first party and the first party shall not have the obligation to name the other party as an additional insured. Tenant

acknowledges that Landlord shall not carry insurance on and shall not be responsible for damage to, Tenant's Property or Alterations, betterments or improvements to the Premises, and that Landlord shall not carry insurance against, or be responsible for any loss suffered by Tenant due to, interruption of Tenant's business.

ARTICLE 11
EMINENT DOMAIN

Section 11.1. If, the Building or the Premises shall be acquired or condemned for any public or quasi-public use or purpose, this Lease and the whole of the Real Property the Term shall end as of the date of the vesting of title with the same effect as if said date were the Expiration Date. If only a part of the Real Property and not the entire Premises shall be so acquired or condemned then, (1) except as hereinafter provided in this Section 11.1, this Lease and the Term shall continue in force and effect, but, if a part of the Premises is included in the part of the Real Property so acquired or condemned, from and after the date of the vesting of title, the Fixed Rent and the Escalation Rent shall be reduced in the proportion which the area of the part of the Premises so acquired or condemned bears to the total area of the Premises immediately prior to such acquisition or condemnation and Tenant's Share shall be redetermined based upon the proportion in which the ratio between the rentable area of the Premises remaining after such acquisition or condemnation bears to the rentable area of the Building remaining after such acquisition or condemnation; and (2) if the part of the Real Property so acquired or condemned shall contain more than fifteen percent ( 15% ) of the total area of the Premises immediately prior to such acquisition or condemnation, or if, by reason of such acquisition or condemnation, Tenant no longer has reasonable means of access to the Premises, Tenant, at Tenant's option, may give to Landlord, within sixty (60) days next following the date upon which Tenant shall have received notice of vesting of title, a thirty (30) days' notice of termination of this Lease. If any such thirty (30) days' notice of termination is given by Landlord or Tenant, this Lease and the Term shall come to an end and expire upon the expiration of said thirty (30) days with the same effect as if the date of expiration of said thirty (30) days were the Expiration Date. If a part of the Premises shall be so acquired or condemned and this Lease and the Term shall not be terminated pursuant to the foregoing provisions of this Section 11.1, Landlord, at Landlord's expense, shall restore that part of the Premises not so acquired or condemned by erecting demising walls and restoring the Building Systems serving the Premises, but not the distribution portions of such Systems located within the Premises, at the point at which such systems enter the Premises, to a self-contained rental unit exclusive of Tenant's Alterations, betterments and improvements at the Premises. Upon the termination of this Lease and the Term pursuant to the provisions of this Section 11.1, the Fixed Rent and Escalation Rent shall be apportioned and any prepaid portion of Fixed Rent and Escalation Rent for any period after such date shall be refunded by Landlord to Tenant.

Section 11.2. In the event of any such acquisition or condemnation of all or any



part of the Real Property, Landlord shall be entitled to receive the entire award for any such acquisition or condemnation, Tenant shall have no claim against Landlord or the condemning authority for the value of any unexpired portion of the Term and Tenant hereby expressly assigns to Landlord all of its right in and to any such award. Nothing contained in this Section 11.2 shall be deemed to prevent Tenant from making a separate claim in any condemnation proceedings for the then value of any Tenant's Property included in such taking, and for any moving expenses.

## ARTICLE 12
## ASSIGNMENT, SUBLETTING, MORTGAGE, ETC.

Section 12.1. (A) Tenant, without the prior consent of Landlord in each instance, shall not (a) assign its rights or delegate its duties under this Lease (whether by operation of law, transfers of interests in Tenant or otherwise), mortgage or encumber its interest in this Lease, in whole or in part, (b) sublet, or permit the subletting of, the entire Premises or, (c) permit the Premises or any part thereof to be occupied or used for desk space, mailing privileges or otherwise, by any Person other than Tenant.

(B)     If this Lease is assigned to any person or entity pursuant to the provisions of the Bankruptcy Code, any and all monies or other consideration payable or otherwise to be delivered in connection with such assignment shall be paid or delivered to Landlord, shall be and remain the exclusive property of Landlord and shall not constitute property of Tenant or of the estate of Tenant within the meaning of the Bankruptcy Code. Any and all monies or other consideration constituting Landlord's property under the preceding sentence not paid or delivered to Landlord shall be held in trust for the benefit of Landlord and shall be promptly paid to or turned over to Landlord.

Section 12.2. (A) If Tenant's interest in this Lease is assigned in violation of the provisions of this Article 12, such assignment shall be void and of no force and effect against Landlord; provided, however, that Landlord may collect an amount equal to the then Fixed Rent plus any other item of Rental from the assignee as a fee for its use and then Fixed Rent plus any other item of Rental from the assignee as a fee for its use and occupancy, and shall apply the net amount collected to the Fixed Rent and other items of Rental reserved in this Lease. If the Premises or any part thereof are sublet to, or occupied by, or used by, any Person other than Tenant, whether or not in violation of this Article 12, Landlord, after default by Tenant under this Lease, including, without limitation, a subletting or occupancy in violation of this Article 12, may collect any item of Rental or other sums paid by the subtenant, user or occupant as a fee for its use and occupancy, and shall apply the net amount collected to the Fixed Rent and other items of Rental reserved in this Lease. No such assignment, subletting, occupancy or use, whether with or without Landlord's prior consent, nor any such collection or application of Rental with or without Landlord's prior consent, nor any such collection or application of Rental or fee for use and occupancy, shall be deemed a waiver by Landlord of any term, covenant or condition of this Lease or the acceptance by Landlord of such assignee, subtenant, occupant or user as tenant hereunder. The consent by Landlord to any assignment, subletting of the entire Premises, occupancy or use shall not relieve Tenant or such assignee, subtenant or occupant, as the case may be, from its obligation to obtain

18



the express prior consent of Landlord to any further assignment, subletting of the entire Premises, occupancy or use.

(B)   Tenant shall reimburse Landlord on demand for any costs that may be incurred by Landlord in connection with any proposed assignment of Tenant's interest in this Lease or any proposed subletting of the entire Premises, including, without limitation, any reasonable processing fee, reasonable attorneys' fees and disbursements and the reasonable costs of making investigations as to the acceptability of the proposed subtenant or the proposed assignee of the entire Premises.

(C)   Neither any assignment of Tenant's interest in this Lease nor any subletting, occupancy or use of the Premises or any part thereof by any Person other than Tenant, nor any collection of Rental by Landlord from any Person other than Tenant as provided in this Section 12.2, nor any application of any such Rental as provided in this Section 12.2 shall, in any circumstances, relieve Tenant of its obligations under this Lease on Tenant's part to be observed and performed.

(D)   Any Person to which this Lease is assigned pursuant to the provisions of the Bankruptcy Code shall be deemed without further act or deed to have assumed all of the obligations arising under this Lease on and after the date of such assignment. Any such assignee shall execute and deliver to Landlord upon demand an instrument confirming such assumption. No assignment of this Lease shall relieve Tenant of its obligations hereunder and, subsequent to any assignment, Tenant's liability hereunder shall continue notwithstanding any subsequent modification or amendment hereof or the release of any subsequent tenant hereunder from any liability, to all of which Tenant hereby consents in advance.

Section 12.3. (A) If Tenant assumes this Lease and proposes to assign the same pursuant to the provisions of the Bankruptcy Code to any Person who shall have made a bona fide offer to accept an assignment of this Lease on terms acceptable to Tenant, then notice of such proposed assignment shall be given to Landlord by Tenant no later than twenty (20) days after receipt by Tenant, but in any event no later than ten (10) days prior to the date that Tenant shall make application to a court of competent jurisdiction for authority and approval to enter into such assignment and assumption. Such notice shall set forth (a) the name and address of such Person, (b) all of the terms and conditions of such offer, and (c) adequate assurance of future performance by such Person under the Lease as set forth in Paragraph (B) below, including, without limitation, the assurance referred to in Section 365(b)(3) of the Bankruptcy Code. Landlord shall have the prior right and option, to be exercised by notice to Tenant given at any time prior to the effective date of such proposed assignment, to accept an assignment of this Lease upon the same terms and conditions and for the same consideration, if any, as the bona fide offer made by such Person, less any brokerage commissions which would otherwise be payable by Tenant out of the consideration to be paid by such Person in connection with the assignment of this Lease.

(B)   The term "adequate assurance of future performance" as used in this Lease shall mean that any proposed assignee shall, among other things, (a) deposit



with Landlord on the assumption of this Lease the sum of the then Fixed Rent as security for the faithful performance and observance by such assignee of the terms and obligations of this Lease, which sum shall be held by Landlord as security under this Lease, (b) furnish Landlord with financial statements of such assignee for the prior three (3) fiscal years, as finally determined after an audit and certified as correct by a certified public accountant, which financial statements shall show a net worth of at least six (6) times the then Fixed Rent for each of such three (3) years, (c) grant to Landlord a security interest in such property of the proposed assignee as Landlord shall deem necessary to secure such assignee's future performance under this Lease, and (d) provide such other information or take such action as Landlord, in its reasonable judgment shall determine is necessary to provide adequate assurance of the performance by such assignee of its obligations under the Lease.

Section 12.4. (A) As long as RJZM Corp., LLC. d/b/a All-Med & Rehabilitation of New York is Tenant, Tenant shall have the privilege, subject to the terms and conditions hereinafter set forth, without the consent of Landlord but subject to Tenant's satisfaction of conditions set forth in Section 12.7(A) hereof, to assign its interest in this Lease (i) to any corporation which is a successor to Tenant either by merger or consolidation, (ii) to a purchaser of all or substantially all of Tenant's assets (provided such purchaser shall have also assumed substantially all of Tenant's liabilities and in addition paid to Landlord the additional sum consisting of one (1) years Fixed Rent) or (iii) to a Person which shall (1) Control, (2) be under the Control of, or (3) be under common Control with Tenant (any such Person referred to in this clause (iii) being a "Related Entity"). As long as RJZM Corp., LLC. is Tenant, Tenant also shall have the privilege, subject to the terms and conditions hereinafter set forth, without the consent of Landlord, but subject to Tenant's satisfaction of conditions set forth in Section 12.6(A) hereof to sublease all or any portion of the Premises to a Related Entity or to sublease a portion of the Demised Premises to any medical or health related use except for any use prohibited herein. Any assignment or subletting described above may only be made upon the condition that (a) any such assignee or subtenant shall continue to use the Premises for the conduct of the same business as Tenant was conducting prior to such assignment or sublease, (b) the principal purpose of such assignment or sublease is not the acquisition of Tenant's interest in this Lease or to circumvent the provisions of Section 12.1 of this Article (except if such assignment or sublease is made to a Related Entity and is made for a valid intracorporate business purpose and is not made to circumvent the provisions of Section 12.1 of this Article), and (c) in the case of an assignment, any such assignee shall have a net worth and annual income and cash flow, determined in accordance with generally accepted accounting principles, consistently applied, after giving effect to such assignment, equal to the greater of Tenant's net worth and annual income and cash flow, as so determined, on (i) the date immediately preceding the date of such assignment, and (ii) the Commencement Date. Tenant shall, within ten (10) Business Days after execution thereof, deliver to Landlord either (x) a duplicate original instrument of assignment in form and substance reasonably satisfactory to Landlord, duly executed by Tenant, together with an instrument in form and substance reasonably satisfactory to Landlord, duly executed by the assignee, in which such assignee shall assume observance and performance of, and agree to be personally bound by, all of the



terms, covenants and conditions of this Lease on Tenant's part to be observed and performed, or (y) a duplicate original sublease of the entire Premises in form and substance reasonably satisfactory to Landlord, duly executed by Tenant and the subtenant.

(B) If Tenant is a partnership, the admission of new Partners, the withdrawal, retirement, death, incompetency or bankruptcy of any Partner, or the reallocation of partnership interests among the Partners shall not constitute an assignment of this Lease, provided the principal purpose of any of the foregoing is not to circumvent the restrictions on assignment set forth in the provisions of this article 12.    The reorganization of Tenant from a professional corporation into a partnership or the reorganization of a Tenant from a partnership into a professional corporation, shall not constitute an assignment of this Lease, provided that immediately following such reorganization the Partners of Tenant shall be the same as the shareholders of Tenant existing immediately prior to such reorganization, or the shareholders of Tenant shall be the same as the Partners of Tenant existing immediately prior to such reorganization, as the case may be. If Tenant shall become a professional corporation, each individual shareholder in Tenant and each employee of a professional corporation which is a shareholder in Tenant shall have the same personal liability as such individual or employee would have under this Lease if Tenant were a partnership and such individual or employee were a Partner in Tenant. If any individual Partner in Tenant is or becomes an employee of a professional corporation, such individual shall have the same personal liability under this Lease as such individual would have if he and not the professional corporation were a Partner of Tenant.

(C) Except as set forth above, either a transfer (including the issuance of treasury stock or the creation and issuance of new stock or a new class of stock) of a controlling interest in the shares of Tenant (if Tenant is a corporation or trust) or a transfer of a majority of the total interest in Tenant (if Tenant is a partnership or other entity) at anyone time or over a period of time through a series of transfers, shall be deemed an assignment of this Lease and shall be subject to all of the provisions of this Article 12, including, without limitation, the requirement that Tenant obtain Landlord's prior consent thereto. The transfer of shares of Tenant (if Tenant is a corporation or trust) for purposes of this Section 12.4 shall not include the sale of shares by persons other than those deemed "insiders" within the meaning of the Securities Exchange Act of 1934, as amended, which sale is effected through the "over-the-counter market" or through any recognized stock exchange.

Section 12.5.___ If, at any time after the originally named Tenant herein may have assigned Tenant's interest in this Lease, this Lease shall be disaffirmed or rejected in any proceeding of the types described in paragraph (E) of Section 16.1 hereof, or in any similar proceeding, or in the event of termination of this Lease by reason of any such proceeding or by reason of lapse of time following notice of termination given pursuant to said Article 16 based upon any of the Events of Default set forth in such paragraph, any prior Tenant, including, without limitation, the originally named Tenant, upon request of Landlord given within thirty (30) days next following any such disaffirmance, rejection or termination (and actual notice thereof to Landlord in the event of a



disaffirmance or rejection or in the event of termination other than by act of Landlord), shall (1) pay to Landlord all Fixed Rent, Escalation Rent and other items of Rental due and owing by the assignee to Landlord under this Lease to and including the date of such disaffirmance, rejection or termination, and (2) as "tenant", enter into a new lease with Landlord of the Premises for a term commencing on the effective date of such disaffirmance, rejection or termination and ending on the Expiration Date, unless sooner terminated as in such lease provided, at the same Fixed Rent and upon the then executory terms, covenants and conditions as are contained in this Lease, except that (a) Tenant's rights under the new lease shall be subject to the possessory rights of the assignee under this Lease and the possessory rights of any person claiming through or under such assignee or by virtue of any statute or of any order of any court, (b) such new lease shall require all defaults existing under this Lease to be cured by Tenant with due diligence, and (c) such new lease shall require Tenant to pay all Escalation Rent reserved in this Lease which, had this Lease not been so disaffirmed, rejected or terminated, would have accrued under the provisions of Article 27 hereof after the date of such disaffirmance, rejection or termination with respect to any period prior thereto. If any such prior Tenant shall default in its obligation to enter into said new lease for a period of ten (10) days next following Landlord's request therefor, then, in addition to all other rights and remedies by reason of such default, either at law or in equity, Landlord shall have the same rights and remedies against such Tenant as if such Tenant had entered into such new lease and such new lease had thereafter been terminated as of the commencement date thereof by reason of such Tenant's default thereunder.

Section 12.6. (A) Notwithstanding the provisions of Section 12.1 hereof, any subleasing by Tenant is subject to the following:

(1) the Premises shall be used solely for the uses permitted under Article 2 hereof;

(2) no uncured Event of Default shall have occurred and be continuing;

(3) upon the date Tenant delivers the Tenant Statement to Landlord and upon the date immediately preceding the commencement date of any sublease of the entire Premises approved by Landlord, the proposed subtenant shall have a financial standing (taking into consideration the obligations of the proposed subtenant under the sublease) reasonably satisfactory to Landlord, be of a character in keeping with the standards in such respects of the other tenancies in the Building, and be an experienced operator of facilities comparable to the facility to be operated at the Premises

(4) the subletting of the entire Premises shall be expressly subject to all of the terms, covenants, conditions and obligations on Tenant's part to be observed and performed under this Lease and the further condition and restriction that the sublease shall not be modified without the prior written consent of Landlord, which consent shall not be unreasonably withheld, or assigned (by operation of law or otherwise; for purposes of this clause (6), the transfer of a majority of the issued and outstanding capital stock of any corporate subtenant or the transfer of a majority of the total interest in a subtenant (if a partnership or other entity), however accomplished, whether in a single



transaction or in a series of related or unrelated transactions, shall be deemed an assignment of the sublease, except that the transfer of the outstanding capital stock of a corporate subtenant shall be deemed not to include the sale of such stock by persons other than those deemed "insiders" within the meaning of the Securities Exchange Act of 1934, as amended, which sale is effected through the "over-the-counter market" or through any recognized stock exchange) encumbered or otherwise transferred or the subleased premises further sublet by the subtenant in whole or in part, or any part thereof suffered or permitted by the subtenant to be used or occupied by others, without the prior written consent of Landlord in each instance;

(5) any subletting shall end no later than one (1) day before the Expiration Date;

(6) any sublease shall expressly provide that in the event of termination, re-entry or dispossess of Tenant by Landlord under this Lease, Landlord may, at its option, take over all of the right, title and interest of Tenant, as sublessor under such sublease, and such subtenant, at Landlord's option, shall attorn to Landlord pursuant to the then executory provisions of such sublease, except that Landlord shall not be:

(i)     liable for any act or omission of Tenant under such sublease, or

(ii)    subject to any defense or offsets, which such subtenant may have against Tenant, or

(iii)   bound by any previous payment which such subtenant may have made to Tenant more than thirty (30) days in advance of the date upon which such payment was due, unless previously approved by Landlord,

(iv)    bound by any obligation to make any payment to or on behalf of such subtenant, or

(v)     bound by any obligation to perform any work or to make improvements to the Premises, or

(vi)    bound by any amendment or modification of such sublease made without its consent, or

(vii)   bound to return such subtenant's security deposit, if any, until such deposit has come into its actual possession and such subtenant would be entitled to such security deposit pursuant to the terms of such sublease.

(B)     At least ten (10) Business Days prior to any proposed subletting of the entire Premises, Tenant shall submit a statement to Landlord (a "Tenant Statement") containing the following information: (a) the name and address of the proposed subtenant, (b) the terms and conditions of the proposed subletting, including, without limitation, the rent payable and the value (including cost, overhead and supervision) of

23



any improvements (including any demolition to be performed) to the Premises for occupancy by such subtenant, (c) the nature and character of the business of the proposed subtenant and ( d) any other information that Landlord may reasonably request, together with a statement specifically directing Landlord's attention to the provisions of this Section 12.6(B) requiring Landlord to respond to Tenant's request within ten (10) Business Days after Landlord's receipt of the Tenant Statement. If Landlord shall fail to notify Tenant within said ten (10) Business Day period of Landlord's consent to or disapproval of the proposed subletting pursuant to the Tenant Statement as contemplated by Section 12.6(A) hereof, or if Landlord shall have consented to such subletting as provided in Section 12.6(A) hereof, Tenant shall have the right to sublease the Premises to such proposed subtenant on the same terms and conditions set forth in the Tenant Statement, subject to the terms and conditions of this Lease, including, without limitation, paragraph (A) of this Section 12.6. If Tenant shall not enter into such sublease within sixty (60) days after the delivery of the Tenant Statement to Landlord, then the provisions of Section 12.1 and this Section 12.6 shall again be applicable to any other proposed subletting. If Tenant shall enter into such sublease within sixty (60) days as aforesaid, Tenant shall deliver a true, complete and fully executed counterpart of such sublease to Landlord within (5) days after execution thereof.

(C) The failure by Landlord to exercise its option under Section 12.6(B) with respect to any subletting shall not be deemed a waiver of such option with respect to any extension of such subletting or any subsequent subletting of the Premises affected thereby.

Section 12.7. (A) Notwithstanding the provisions of Section 12.1 hereof, Landlord shall not unreasonably withhold its consent to an assignment of this Lease in its entirety provided that:

(1) the Premises shall be used solely for the purposes permitted under Article 2 hereof.

(2) no uncured Event of Default shall have occurred and be continuing;

(3) upon the date Tenant delivers the Assignment Statement to Landlord and upon the date immediately preceding the date of any assignment approved by Landlord, the proposed assignee shall have a financial standing (taking into consideration the obligations of the proposed assignee under this Lease) reasonably satisfactory to Landlord, be of a character, in keeping with the standards in such respects of the other tenancies in the Building, and be an experienced operator of facilities comparable to the facility to be operated at the Premises  and

(4) the assignee shall agree to assume all of the obligations of Tenant under this Lease form and after the date of the assignment.

(B)    (1) At least ten (10) Business Days prior to any proposed assignment, Tenant shall submit a statement to Landlord (the "Assignment Statement")

74



containing the following information: (i) the name and address of the proposed assignee, (ii) the essential terms and conditions of the proposed assignment, including, without limitation, the consideration payable for such assignment and the value (including cost, overhead and supervision) of any improvements (including any demolition to be performed) to the Premises proposed to be made by Tenant to prepare the Premises for occupancy by such assignee, (iii) the nature and character of the business of the proposed assignee, (iv) if Tenant shall propose to replace the Guaranty with a Guaranty from the assignee, (iv) if Tenant shall propose to replace the Guaranty with a Guaranty from the principals of the proposed assignee, the name and address of such principals, and information in reasonable detail regarding the financial condition and character of such principals; and (v) any other information that Landlord may reasonably request, together with a statement specifically directing Landlord's attention to the provisions of this Section 12.8(B) requiring Landlord to respond to Tenant's request within ten (10) Business Days after Landlord's receipt of the Assignment Statement. The Assignment Statement shall be executed by Tenant and the proposed assignee and shall indicate both parties' intent (but not necessarily binding obligation) to enter into an assignment agreement conforming to the terms and conditions of the Assignment Statement and on such other terms and conditions to which the parties may agree which are not inconsistent with the essential terms set forth in the Assignment Statement.

(2) If Landlord shall fail to notify Tenant within said ten (10) Business Day period of Landlord's consent to or disapproval of the proposed assignment pursuant to the Assignment Statement, or if Landlord shall have consented to such assignment as provided in Section 12.7(A) hereof, Tenant shall be free to assign the Lease to such proposed assignee on the same terms and conditions set forth in the Assignment Statement. If Tenant shall not enter into such assignment within sixty (60) days after the delivery of the Assignment Statement to Landlord, then the provisions of this Section 12.7 shall again be applicable in their entirety to any proposed assignment.

(C) If Tenant shall assign this Lease, Tenant shall deliver to Landlord, within five (5) days after execution thereof, (x) a duplicate original instrument of assignment in form and substance reasonably satisfactory to Landlord, duly executed by Tenant, and (y) an instrument in form and substance reasonably satisfactory to Landlord, duly executed by the assignee, in which such assignee shall assume observance and performance of, and agree to be personally bound by, all of the terms, covenants and conditions of this Lease on Tenant's part to be observed and performed.

Section 12.8.    If Landlord shall approve an assignment of this Lease by the Tenant originally named herein to an experienced operator of facilities comparable to the facility to be operated at the Premises, and (x) Tenant, as part of its request for consent, shall request that Tenant be released of liability under this Lease from and after the effective date of such assignment; and (y) the proposed assignee shall have a net worth of not less than Five Million ($5,000,000.00) Dollars which shall be certified by Tenant and such assignee in the Assignment Statement then, effective as of the effective date of such assignment, (I) the assignee shall deposit with the Landlord an amount equal to twelve (12) months Fixed rent to be held and applied as security under this Lease (which amount shall be replenished by the assignee if applied); and (ii) the principals of the assignee (who shall have a net worth not less than Two Million ($2,000,000.00) Dollars shall



deliver to Landlord a so-called "good guy" guaranty, jointly and severally guarantying all payment and performance obligations of the assignee under the Lease with respect to the period prior to the surrender of vacant possession of the Premises to Landlord, Upon the satisfaction of such conditions, the Tenant originally named herein shall be released of all liability under this Lease with respect to the period from and after the effective date of such assignment.

## ARTICLE 13
## ELECTRICITY AND GAS

Section 13.1. Tenant shall at all times comply with the rules, regulations, terms and conditions applicable to service, equipment, wiring and requirements of the public utility supplying electricity and gas to the Building. Tenant shall not use any electrical or gas equipment which, in Landlord's reasonable judgment, would exceed the capacity of existing feeders or pipes to the Building or the risers or wiring installations therein or which will overload such installations or interfere with the electrical or gas service to other tenants of the Building. In the event that Tenant's electrical or gas requirements necessitate installation of an additional riser, risers, pipes or other proper and necessary equipment, Landlord shall so notify Tenant of same. Immediately upon receipt of such notice, Tenant shall either cease such use of such additional electricity or gas or shall request that additional electrical or gas capacity (specifying the amount requested) be made available to Tenant. Landlord, in Landlord's reasonable judgment shall determine whether to make available such additional capacity to Tenant and the amount of such additional capacity to be made available. If Landlord shall agree to make available additional capacity and the same necessitates installation of an additional riser, risers, pipes or other proper and necessary equipment, including, without limitation, any switch gear, the same shall be installed by Landlord. Any such installation shall be made at Tenant's sole cost and expense, and shall be chargeable and collectible as additional rent and paid within ten (10) days after the rendition of a bill to Tenant therefor. Landlord shall not be liable in any way to Tenant for any failure or defect in the supply or character of electric or gas service furnished to the Premises by reason of any requirement, act or omission of the utility serving the Building or for any other reason not attributable to the gross negligence of Landlord, whether electricity and/or gas is provided by public or private utility or by any generation system owned and operated by Landlord.

Section 13.2. Tenant shall obtain electric energy and gas directly from the public utility furnishing electric service to the Building. The costs of such service shall be paid by Tenant directly to such public utility. Such electricity may be furnished to Tenant by means of the existing electrical and gas facilities serving the Premises, at no charge, to the extent of the same are suitable and safe for such purposes as determined by Landlord. All meters and all additional-panel boards, feeders, risers, wiring, pipes and other conductor and equipment which may be required to obtain electricity and gas shall be installed by Tenant at Tenant's expense.



Section 13.3. (A) If Landlord shall be required by Requirements to have Tenant obtain electricity and/or gas pursuant to the provisions of this Section 13.3, such service shall be furnished by Landlord to the Premises and Tenant shall pay to Landlord, as additional rent for such service, during the Term, an amount (the "Utility Additional Rent") equal to (i) the amount Landlord actually pays to the utility company to provide such service to the Premises, including all applicable surcharges, demand charges, time-of-day charges, energy charges, fuel adjustment charges, rate adjustment charges, taxes and other sums payable in respect thereof based on Tenant's demand and/or consumption of such service (and/or any other method of quantifying Tenant's use of or demand for such service as set forth in the utility company's tariff) as registered on a meter or submeter (installed by Landlord, at Tenant's expense) for purposes of measuring such demand, consumption and/or other method of quantifying Tenant's use of or demand for such service plus (ii) the actual out of pocket cost of Landlord of reading such meters and preparing bills. Tenant, from time to time, shall have the right to review Landlord's meter readings, and Landlord's calculation of the Utility Additional Rent, at reasonable times and on reasonable prior notice, by giving notice thereof to Landlord on or prior to the ninetieth (90th) day after the date when Landlord gives Tenant a bill or statement for the for the Utility Additional Rent.

(B) Where more than one meter or submeter measures the electricity and/or gas supplied to Tenant, and the service rendered through each meter or submeter shall be aggregated, computed and billed in accordance with the provisions hereinabove set forth (i.e., Tenant shall not pay more than it would have paid if only one (1) meter measured such service). Bills for the Utility Additional Rent shall be rendered to Tenant at such time as Landlord may elect, and Tenant shall pay the amount shown thereon to Landlord within ten (10) days after receipt of such bill. Tenant expressly acknowledges that in connection with the installation of the meters or submeters, the electricity and/or gas being supplied to the Premises shall be temporarily interrupted. Landlord shall use reasonable efforts to minimize interference with the conduct of Tenant's business in connection with such installation; provided, however, that Landlord shall have no obligation to employ contractors or labor at so-called overtime or other premium pay rates or to incur any other overtime costs or expenses whatsoever.

## ARTICLE 14
## ACCESS TO PREMISES

Section 14.1. (A) Tenant shall permit Landlord, Landlord's agents, representatives, contractors and employees and public utilities servicing the Building to erect, use and maintain, concealed ducts, pipes, pipe chases, conduits and other matters in and through the Premises, including the ceiling and floor of the Premises, and do all work necessary or desirable to benefit the balance of the Building, including the build out of space of other occupants of the Building, provided, however, that such work shall not, in any substantial manner, reduce the rentable space of the Premises, the services provided to the Premises, or Tenant's access to the Premises. Landlord, Landlord's agents, representatives, contractors, and employees and the agents, representatives, contractors,

27



and employees of public utilities servicing the Building shall have the right to enter the Premises at all reasonable times upon advance notice (except in the case of an emergency in which event Landlord and Landlord's agents, representatives, contractors, and employees may enter without prior notice to Tenant), which notice may be oral, to examine the same, to show them to prospective purchasers, or prospective or existing Mortgagees or Lessors, and to make such repairs, alterations, improvements, additions or restorations (i) as Landlord may deem necessary or desirable to the Premises or to any other portion of the Building, or (ii) which Landlord may elect to perform following five (5) days after notice, except in the case of an emergency (in which event Landlord and Landlord's agents, representatives, contractors, and employees may enter without prior notice to Tenant), following Tenant's failure to make repairs or perform any work which Tenant is obligated to make or perform under this Lease, or (iii) for the purpose of complying with any Requirements, a Superior Lease or a Mortgage, and Landlord shall be allowed to take all material into and upon the Premises that may be required therefor without the same constituting an eviction or constructive eviction of Tenant in whole or in part and the Fixed Rent (and any other item of Rental) shall in no wise abate while said repairs, alterations, improvements, additions or restorations are being made, by reason of loss or interruption of business of Tenant, or otherwise.

(B)    Any work performed or installations made pursuant to this Article 14 shall be made with reasonable diligence.

(C)    Except as hereinafter provided, any pipes, ducts, or conduits installed in or through the Premises pursuant to this Article 14 shall be concealed behind, beneath or within partitioning, columns, ceilings or floors located or to be located in the Premises. Notwithstanding the foregoing, any such pipes, ducts, or conduits may be furred at points immediately adjacent to partitioning columns or ceilings located or to be located in the Premises, provided that the same are completely furred and that the installation of such pipes, ducts, or conduits, when completed, shall not significantly reduce the usable area of the Premises.

Section 14.2. During the twelve-(12) month period prior to the Expiration Date, Landlord may exhibit the Premises to prospective tenants thereof.

Section 14.3. If Tenant shall not be present when for any reason entry into the Premises shall be necessary or permissible, Landlord or Landlord's agents, representatives, contractors or employees may enter the same without rendering Landlord or such agents liable therefor if during such entry Landlord or Landlord's agents shall accord reasonable care under the circumstances to Tenant's Property, and without in any manner affecting this Lease. Nothing herein contained, however, shall be deemed or construed to impose upon Landlord any obligation, responsibility or liability whatsoever, for the care, supervision or repair of the Building or any part thereof, other than as herein provided.

Section 14.4. Landlord also shall have the right at any time, if required by law or regulation, without the same constituting an actual or constructive eviction and without



incurring any liability to Tenant therefor, to change the arrangement or location of entrances or passageways, doors and doorways, and corridors, elevators, stairs, toilets, or other public parts of the Building and to change the name, number or designation by which the Building is commonly known, provided any such change does not (a) unreasonably reduce, interfere with or deprive Tenant of access to the Building or the Premises or (b) reduce the rentable area ( except by a de minimis amount) of the Premises. All parts ( except surfaces facing the interior of the Premises) of all walls, windows and doors bounding the Premises (including exterior Building walls, exterior core corridor walls, exterior doors and entrances ), all balconies, terraces and roofs adjacent to the Premises, all space in or adjacent to the Premises used for shafts, stacks, stairways, chutes, pipes, conduits, ducts, fan rooms, heating, air cooling, plumbing and other mechanical facilities, service closets and other Building facilities are not part of the Premises, and Landlord shall have the use thereof, as well as access thereto through the Premises for the purposes of operation, maintenance, alteration and repair. Any such change or alteration shall be performed in accordance with NYS Health Department Article 28 requirements.

Section 14.5. Tenant acknowledges that the Building and other tenant spaces therein shall be under construction during the term of this Lease, that, subject to the provisions of this Article 14, the same shall involve dirt, dust, noise vibration and other matters, and that the same shall not entitle Tenant to any damages or abatement of rent, or to any claim of constructive eviction.

## ARTICLE 15
## CERTIFICATE OF OCCUPANCY

Section 15.1. Tenant shall not at any time use or occupy the Premises in violation of the certificate of occupancy at such time issued for the Premises or for the Building and in the event that any department of the City or State of New York shall hereafter contend or declare by notice, violation, order or in any other manner whatsoever that the Premises are used for a purpose which is a violation of such certificate of occupancy, Tenant, upon written notice from Landlord or any Governmental Authority, shall immediately discontinue such use of the Premises.

Section 15.2. Tenant acknowledges that the Building is currently under construction and no certificate of occupancy is currently issued for the Premises. Landlord, at its sole cost and expense, shall obtain a temporary or permanent certificate of occupancy covering the Premises permitting the Premises to be used for "medical office" use. Tenant shall reasonably cooperate with Landlord in Landlord's efforts to obtain the certificate of occupancy for the Premises. Tenant agrees that it will pay the expediter's fees and the fees to maintain the temporary certificate of occupancy to Landlord as additional rent.

## ARTICLE 16
## DEFAULT



Section 16.1 Each of the following events shall be an "Event of Default" hereunder:

(A)    If Tenant shall default in the payment when due of any installment of Fixed Rent or in the payment when due of any other item of Rental, and, in either event, such default shall continue for five (5) days after notice of such default is given to Tenant in accordance with the provisions of Article 26 hereof; or

(B)    if Tenant shall default in the observance or performance of any term, covenant or condition on Tenant's part to be observed or performed under any other lease with Landlord or Landlord's predecessor in interest of space in the Building and such default shall continue beyond any grace period set forth in such other lease for the remedying of such default; or

(C)    If the Premises shall become abandoned; or

(D)    if Tenant's interest or any portion thereof in this Lease shall devolve upon or pass to any person, whether by operation of law or otherwise, except as expressly permitted under Article 12 hereof; or

(E)    (1)    if Tenant shall generally not, or shall be unable to, or shall admit in writing its inability to pay its debts as they become due; or

(2)    if Tenant shall commence or institute any case, proceeding or other action (A) seeking relief on its behalf as debtor, or to adjudicate it a bankrupt or insolvent, or seeking reorganization, arrangement, adjustment, winding-up, liquidation, dissolution, composition or other relief with respect to it or its debts under any existing or future law of any jurisdiction, domestic or foreign, relating to bankruptcy, insolvency, reorganization or relief of debtors, or (B) seeking appointment of a receiver, trustee, custodian or other similar official for it or for all or any substantial part of its property; or

(3)    if Tenant shall make a general assignment for the benefit of creditors; or

(4)    if any case, proceeding or other action shall be commenced or instituted against Tenant (A) seeking to have an order for relief entered against it as debtor or to adjudicate it a bankrupt or insolvent, or seeking reorganization, arrangement, adjustment, winding-up, liquidation, dissolution, composition or other relief with respect to it or its debts under any existing or future law of any jurisdiction, domestic or foreign, relating to bankruptcy, insolvency, reorganization or relief of debtors, or (B) seeking appointment of a receiver, trustee, custodian or other similar official for it or for all or any substantial part of its property, which in either of such cases (i) results in any such entry of an order for relief, adjudication of bankruptcy or insolvency or such an appointment or the issuance or entry of any other order having a similar effect or (ii) remains undismissed for a period of ninety (90) days; or

(5) if any case, proceeding or other action shall be commenced

30



or instituted against Tenant seeking issuance of a warrant of attachment, execution, distrait or similar process against all or any substantial part of its property which results in the entry of an order for any such relief which shall not have been vacated, discharged, or stayed or bonded pending appeal within sixty (60) days from the entry thereof; or

(6) if Tenant shall take any action in furtherance of, or indicating its consent to, approval of, or acquiescence in, any of the acts set forth in clauses (2), (3), (4) or (5) above; or

(7) if a trustee, receiver or other custodian is appointed for any substantial part of the assets of Tenant which appointment is not vacated or stayed within seven (7) Business Days; or

(F)    If Tenant shall fail more than four (4) times during any twelve (12) month period to pay any item of Rental when due; or

(G)    If Tenant shall fail to pay any item of Rental when due as required under this Lease and Landlord shall bring more than two (2) summary dispossess proceeding during any twelve (12) month period; or

(H)    if Tenant shall default in the observance or performance of any other term, covenant or condition of this Lease on Tenant's part to be observed or performed and Tenant shall fail to remedy such default within twenty (20) days after notice by Landlord to Tenant of such default, or if such default is of such a nature that it cannot with due diligence be completely remedied within said period of twenty (20) days and Tenant shall not commence within said period of twenty (20) days, or shall not thereafter diligently prosecute to completion, all steps necessary to remedy such default.

Section 16.2. (A) If an Event of Default (i) described in Section 16.1 (E) hereof shall occur and remain uncured, or (ii) described in Sections 16.1(A), (B), (C), (D), (F), (G) or (H) shall occur and remain uncured and Landlord, at any time thereafter, at its option gives written notice to Tenant stating that this Lease and the Term shall expire and terminate on the date Landlord shall give Tenant such notice, then this Lease and the Term and all rights of Tenant under this Lease shall expire and terminate as if the date on which the Event of Default described in clause (i) above occurred or the date of such notice, pursuant to clause (ii) above, as the case may be, were the Fixed Expiration Date and Tenant immediately shall quit and surrender the Premises, but Tenant shall nonetheless be liable for all of its obligations hereunder, as provided for in Articles 17 and 18 hereof. Anything contained herein to the contrary notwithstanding, if such termination shall be stayed by order of any court having jurisdiction over any proceeding described in Section 16.1 (E) hereof, or by federal or state statute, then, following the expiration of any such stay, or if the trustee appointed in any such proceeding, Tenant or Tenant as debtor-in-possession shall fail to assume Tenant's obligations under this Lease within the period prescribed therefor by law or within one hundred twenty (120) days after entry of the order for relief or as may be allowed by the court, or if said trustee,



Tenant or Tenant as debtor-in-possession shall fail to provide adequate protection of Landlord's right, title and interest in and to the Premises or adequate assurance of the complete and continuous future performance of Tenant's obligations under this Lease as provided in Section 12.3(B), Landlord, to the extent permitted by law or by leave of the court having jurisdiction over such proceeding, shall have the right, at its election, to terminate this Lease on five (5) days' notice to Tenant, Tenant as debtor-in-possession or said trustee and upon the expiration of said five (5) day period this Lease shall cease and expire as aforesaid and Tenant, Tenant as debtor-in-possession or said trustee shall immediately quit and surrender the Premises as aforesaid.

(B) If this Lease shall be terminated as provided in Section 16.2(A) hereof, Landlord, without notice, may reenter and repossess the Premises by any legal means without being liable to indictment, prosecution or damages therefor and may dispossess Tenant by summary proceedings or otherwise.

## ARTICLE 17
## REMEDIES AND DAMAGES

Section 17.1. (A) If there shall occur any Event of Default, and this Lease and the Term shall expire and come to an end as provided in Article 16 hereof:

(1) Tenant shall quit and peacefully surrender the Premises to Landlord, and Landlord and its agents may immediately, or at any time after such default or after the date upon which this Lease and the Term shall expire and come to an end, re-enter the Premises or any part thereof, without notice, either by summary proceedings, or by any other applicable action or proceeding, or by any legal means (without being liable to indictment, prosecution or damages, therefor), and may repossess the Premises and dispossess Tenant and any other persons from the Premises and remove any and all of their property and effects from the Premises; and

(2) Landlord, at Landlord's option, may relet the whole or any portion or portions of the Premises from time to time, either in the name of Landlord or otherwise, to such tenant or tenants, for such term or terms ending before, on or after the Expiration Date, at such rental or rentals and upon such other conditions, which may include concessions and free rent periods, as Landlord, in its sole discretion, may determine; provided, however, that Landlord shall have no obligation to relet the Premises or any part thereof and shall in no event be liable for refusal or failure to relet the Premises or any part thereof, or, in the event of any such reletting, for refusal or failure to collect any rent due upon any such reletting, and no such refusal or failure shall operate to relieve Tenant of any liability under this Lease or otherwise affect any such liability, and Landlord, at Landlord's option, may make such repairs, replacements, alterations, additions, improvements, decorations and other physical changes in and to the Premises as Landlord, in its sole discretion, considers advisable or necessary in connection with any such reletting or proposed reletting, without relieving Tenant of any liability under this Lease or otherwise affecting any such liability.

32



(B)    Tenant hereby waives the service of any notice of intention to re-enter or to institute legal proceedings to that end which may otherwise be required to be given under any present or future law. Tenant, on its own behalf and on behalf of all persons claiming through or under Tenant, including all creditors, does further hereby waive any and all rights which Tenant and all such persons might otherwise have under any present or future law to redeem the Premises, or to re-enter or repossess the Premises, or to restore the operation of this Lease, after (a) Tenant shall have been dispossessed by a judgment or by warrant of any court or judge, or (b) any re-entry by Landlord, or (c) any expiration or termination of this Lease and the Term, whether such dispossess, re-entry, expiration or termination shall be by operation of law or pursuant to the provisions of this Lease. The words "re-enter I" "re-entry" and "re-entered" as used in this Lease shall not be deemed to be restricted to their technical legal meanings. In the event of a breach or threatened breach by Tenant, or any persons claiming through or under Tenant, of any term, covenant or condition of this Lease, Landlord shall have the right to enjoin such breach and the right to invoke any other remedy allowed by law or in equity as if re-entry, summary proceedings and other special remedies were not provided in this Lease for such breach. The right to invoke the remedies hereinbefore set forth are cumulative and shall not preclude Landlord from invoking any other remedy allowed at law or in equity.

Section 17.2. (A) If this Lease and the Term shall expire and come to an end as provided in Article 16 hereof, or by or under any summary proceeding or any other action or proceeding, or if Landlord shall re-enter the Premises as provided in Section 17.1, or by or under any summary proceeding or any other action or proceeding, then, in any of said events:

(1) Tenant shall pay to Landlord all Fixed Rent, Escalation Rent and other items of Rental payable under this Lease by Tenant to Landlord to the date upon which this Lease and the Term shall have expired and come to an end or to the date of re-entry upon the Premises by Landlord, as the case may be;

(2) Tenant also shall be liable for and shall pay to Landlord, as damages, any deficiency (referred to as "Deficiency") between the Rental for the period which otherwise would have constituted the unexpired portion of the Term and the net amount, if any, of rents collected under any reletting effected pursuant to the provisions of clause (2) of Section 17.1 (A) for any part of such period (first deducting from the rents collected under any such reletting all of Landlord's expenses in connection with the termination of this Lease, Landlord's re-entry upon the Premises and with such reletting, including, but not limited to, all repossession costs, brokerage commissions, legal expenses, attorneys' fees and disbursements, alteration costs, contribution to work and other expenses of preparing the Premises for such reletting); any such Deficiency shall be paid in monthly installments by Tenant on the days specified in this Lease for payment of installments of Fixed Rent; Landlord shall be entitled to recover from Tenant each monthly Deficiency as the same shall arise; and no suit to collect the amount of the Deficiency for any month shall prejudice Landlord's right to collect the Deficiency for any subsequent month by a similar proceeding; and



(3) whether or not Landlord shall have collected any monthly Deficiency as aforesaid, Landlord shall be entitled to recover from Tenant, and Tenant shall pay to Landlord, on demand, in lieu of any further Deficiency as and for liquidated and agreed final damages, a sum equal to the amount by which the Rental for the period which otherwise would have constituted the unexpired portion of the Term (commencing on the date immediately succeeding the last date with respect to which a Deficiency, if any, was collected) exceeds the then fair and reasonable rental value of the Premises for the same period, both discounted to present worth at the Base Rate; if, before presentation of proof of such liquidated damages to any court, commission or tribunal, the Premises, or any part thereof, shall have been relet by Landlord for the period which otherwise would have constituted the unexpired portion of the Term, or any part thereof, the amount of rent reserved upon such reletting shall be deemed, prima facie, to be the fair and reasonable rental value for the part or the whole of the Premises so relet during the term of the reletting.

(B)    If the Premises, or any part thereof, shall be relet together with other space in the Building, the rents collected or reserved under any such reletting and the expenses of any such reletting shall be equitably apportioned for the purposes of this Section 17.2. Tenant shall in no event be entitled to any rents collected or payable under any reletting, whether or not such rents shall exceed the Fixed Rent reserved in this Lease. Solely for the purposes of this Article 17, the term "Escalation Rent" as used in Section 17.2(A) shall mean the Escalation Rent in effect immediately prior to the Expiration Date, or the date of re-entry upon the Premises by Landlord, as the case may be, adjusted to reflect any increase pursuant to the provisions of Article 27 hereof for the year immediately preceding such event. Nothing contained in Article 16 hereof or this Article 17 shall be deemed to limit or preclude the recovery by Landlord from Tenant of the maximum amount allowed to be obtained as damages by any statute or rule of law, or of any sums or damages to which Landlord may be entitled in addition to the damages set forth in this Section 17.2.

## ARTICLE 18
## LANDLORD FEES AND EXPENSES

Section 18.1. If Tenant shall be in default under this Lease, Landlord may (1) as provided in Section 14.1 hereof, perform the same for the account of Tenant, or (2) make any expenditure or incur any obligation for the payment of money, including, without limitation, reasonable attorneys' fees and disbursements in instituting, prosecuting or defending any action or proceeding, and the cost thereof, with interest thereon at the Applicable Rate, shall be deemed to be additional rent hereunder and shall be paid by Tenant to Landlord within ten (10) days of rendition of any bill or statement to Tenant therefor and if the term of this Lease shall have expired at the time of making of such expenditures or incurring of such obligations, such sums shall be recoverable by Landlord as damages.

Section 18.2. If Tenant shall fail to pay any installment of Fixed Rent, Escalation

34



Rent or any other item of Rental within ten (10) days after the date the same is due, Tenant shall pay to Landlord, in addition to such installment of Fixed Rent, Escalation Rent or other item of Rental, as the case may be, as a late charge and as additional rent, a sum equal to (i) six (6) cents for each dollar of Rental as shall not have been paid to Landlord when due, plus (ii) interest at the Applicable Rate on the amount unpaid, computed from the date such payment was due to and including the date of payment.

## ARTICLE 19
### SUBORDINATION

This Lease is subject and subordinate to all ground or underlying leases and to all mortgages which may now or hereafter affect such leases or the real property of which the demised premises are a part and to all renewals, modifications, consolidations, replacements and extensions of any such underlying leases and mortgages. This clause shall be self-operative and no further instrument of subordination shall be required by any ground or underling lessor or by any mortgagee, affecting any lease or the real property of which the demised premises are a part. In confirmation of such subordination, Tenant shall from time to time execute promptly any certificate that Landlord may request.

## ARTICLE 20
### END OF TERM

Upon the expiration or other termination of this Lease, Tenant shall quit and surrender to Landlord the Premises, vacant, broom clean, in good order and condition, ordinary wear and tear and damage for which Tenant is not responsible under the terms of this Lease excepted, and otherwise in compliance with the provisions of Article 3 hereof. Tenant expressly waives, for itself and for any person claiming through or under Tenant, any rights which Tenant or any such person may have under the provisions of Section 2201 of the New York Civil Practice Law and Rules and of any successor law of like import then in force in connection with any holdover summary proceedings which Landlord may institute to enforce the foregoing provisions of this Article 20. Tenant acknowledges that possession of the Premises must be surrendered to Landlord on the Expiration Date. The parties recognize and agree that the damage to Landlord resulting from any failure by Tenant to timely surrender possession of the Premises as aforesaid will be extremely substantial, will exceed the amount of the monthly installments of the Fixed Rent and Rental theretofore payable hereunder, and will be impossible to accurately measure. Tenant therefore agrees that if possession of the Premises is not surrendered to Landlord within twenty-four (24) hours after the Expiration Date, in addition to any other rights or remedies Landlord may have hereunder or at law, and without in any manner limiting Landlord's right to demonstrate and collect any damages (other than consequential damages) suffered by Landlord and arising from Tenant's failure to surrender the Premises as provided herein, Tenant shall pay to Landlord on account of use and occupancy of the Premises for each month and for each portion of any month during which Tenant holds over in the Premises after the Expiration Date, a sum equal to one and a half (1 ½) times the aggregate of that portion of the Fixed Rent, Escalation Rent and other Rental which was payable under this Lease during the last month of the Term exclusive of the rent credit referred to in Section 1.3 hereof. Nothing

35



herein contained shall be deemed to permit Tenant to retain possession of the Premises after the Expiration Date or to limit in any manner Landlord's right to regain possession of the Premises through summary proceedings, or otherwise, and no acceptance by Landlord of payments from Tenant after the Expiration Date shall be deemed to be other than on account of the amount to be paid by Tenant in accordance with the provisions of this Article 20. The provisions of this Article 20 shall survive the Expiration Date.

## ARTICLE 21
## QUIET ENJOYMENT

As long as this Lease remains in full force or effect, Tenant may peaceably and quietly enjoy the Premises subject, nevertheless, to the terms and conditions of this Lease.

## ARTICLE 22
## FAILURE TO GIVE POSSESSION

Tenant waives any right to rescind this Lease under Section 223-a of the New York Real Property Law or any successor statute of similar nature and purpose than in force and further waives the right to recover any damages which may result from Landlord's failure for any reason to deliver possession of the Premises on the date set forth in Section 1.1 hereof for the commencement of the Term. The provisions of this Article are intended to constitute an "express provision to the contrary" within the meaning of Section 223-a of the New York Real Property Law. If Landlord shall be unable to give possession of the Premises on the date set forth in Section 1.1 hereof for the commencement of the Term, and provided that Tenant is not responsible for such inability to give possession, the Commencement Date shall be deemed to be the date upon which Landlord shall deliver possession of the Premises to Tenant. No such failure to give possession on the date set forth in Section 1.1 hereof for the commencement of the Term shall in any wise affect the validity of this Lease or the obligations of Tenant hereunder or give rise to any claim for damages by Tenant or claim for rescission of this Lease, nor shall the same be construed in any wise to extend the Term.

## ARTICLE 23
## NO WAIVER

Section 23.1. No act or thing done by Landlord or Landlord's agents during the Term shall be deemed an acceptance of a surrender of the Premises, and no agreement to accept such surrender shall be valid unless in writing signed by Landlord. No employee of Landlord or of Landlord's agents shall have any power to accept the keys of the Premises prior to the termination of this Lease. The delivery of keys to any employee of Landlord or of Landlord's agents shall not operate as a termination of this Lease or a surrender of the Premises. In the event Tenant at any time desires to have Landlord sublet

36



the Premises for Tenant's account, Landlord or Landlord's agents are authorized to receive said keys for such purpose without releasing Tenant from any of the obligations under this Lease, and Tenant hereby relieves Landlord of any liability for loss of or damage to any of Tenant's effects in connection with such subletting.

Section 23.2. The failure of Landlord to seek redress for violation of, or to insist upon the strict performance of, any covenant or condition of this Lease, or any of the Rules and Regulations set forth or hereafter adopted by Landlord, shall not prevent a subsequent act, which would have originally constituted a violation of the provisions of this Lease, from having all of the force and effect of an original violation of the provisions of this Lease. The receipt by Landlord of Fixed Rent, Escalation Rent or any other item of Rental with knowledge of the breach of any covenant of this Lease shall not be deemed a waiver of such breach. The failure of Landlord to enforce any of the Rules and Regulations set forth, or hereafter adopted, against Tenant or any other tenant in the Building shall not be deemed a waiver of any such Rules and Regulations. No provision of this Lease shall be deemed to have been waived by Landlord, unless such waiver be in writing signed by Landlord. No payment by Tenant or receipt by Landlord of a lesser amount than the monthly Fixed Rent or other item of Rental herein stipulated shall be deemed to be other than on account of the earliest stipulated Fixed Rent or other item of Rental, or as Landlord may elect to apply same, nor shall any endorsement or statement on any check or any letter accompanying any check or payment as Fixed Rent or other item of Rental be deemed an accord and satisfaction, and Landlord may accept such check or payment without prejudice to Landlord's right to recover the balance of such Fixed Rent or other item of Rental or to pursue any other remedy provided in this Lease. This Lease contains the entire agreement between the parties and all prior negotiations and agreements are merged herein. Any executory agreement hereafter made shall be ineffective to change, modify, discharge or effect an abandonment of this Lease in whole or in part unless such executory agreement is in writing and signed by the party against whom enforcement of the change, modification, discharge or abandonment is sought.

## ARTICLE 24
## WAIVER OF TRIAL BY JURY

The respective parties hereto shall and they hereby do waive trial by jury in any action, proceeding or counterclaim brought by either of the parties hereto against the other (except for personal injury or property damage) on any matters whatsoever arising out of or in any way connected with this Lease, the relationship of Landlord and Tenant, Tenant's use or occupancy of the Premises, or for the enforcement of any remedy under any statute, emergency or otherwise. If Landlord commences any summary proceeding against Tenant, Tenant will not interpose any counterclaim of whatever nature or description in any such proceeding (unless failure to impose such counterclaim would preclude Tenant from asserting in a separate action the claim which is the subject of such counterclaim), and will not seek to consolidate such proceeding with any other action which may have been or will be brought in any other court by Tenant.

37



## ARTICLE 25
## INABILITY TO PERFORM

This Lease and the obligation of Tenant to pay Rental hereunder and the obligation of each party of perform all of the other covenants and agreements hereunder on its part be performed shall in no wise be affected, impaired or excused because such party is unable to fulfill any of its obligations under this Lease expressly or impliedly to be performed or because such party is unable to make, or is delayed in making any repairs, additions, alterations, improvements or decorations or is unable to supply or is delayed in supplying any equipment or fixtures, if such party is prevented or delayed from so doing by reason of strikes or labor troubles or by accident, or by any cause whatsoever beyond such party's control, including, but not limited to, laws, governmental preemption in connection with a national emergency or by reason of any Requirements of any Governmental Authority or by reason of failure of the HVAC, electrical, plumbing, or other Building Systems in the Building, or by reason of the conditions of supply and demand which have been or are affected by war or other emergency ("Unavoidable Delays"). Lack of funds shall not be deemed to be an Unavoidable Delay.

## ARTICLE 26
## BILLS AND NOTICES

Except as otherwise expressly provided in this Lease, any bills, statements, consents, notices, demands, requests or other communications given or required to be given under this Lease shall be in writing and shall be deemed sufficiently given or rendered if delivered by hand (against a signed receipt) or if sent by registered or certified mail (return receipt requested) addressed

if to Tenant (a) (i) at Tenant's address set forth in this Lease, Attn.: Leonard Doherty, CFO (if sent prior to the date Tenant takes occupancy of the Premises for the conduct of business) or (ii) at the Premises, Attn.: Leonard Doherty, CFO (from and after the date, Tenant takes occupancy of the Premises for the conduct of business), or (b) at any place where Tenant or any agent or employee of Tenant may be found if mailed subsequent to Tenant's vacating, deserting, abandoning or surrendering the Premises, and a copy to Tenant c/o All-Med, 4377 Bronx Boulevard, Bronx, New York 10456.

if to Landlord at Landlord's address set forth in this Lease, Attn.: Janusz Sendowski, and with copies to (x) The Law Office of Daniel M. Rosenblum, 305 Madison Avenue, Suite 449, New York, NY 10165 each Mortgage and Lessor shall have requested same, by notice given in accordance with the provisions of this Article 26 at the address designated by such Mortgagee or Lessor, or



to such other address (es) as Landlord, Tenant or any Mortgagee or Lessor may designate as its new address (es) for such purpose by notice given to the other in accordance with the provisions of this Article 26. Any such bill, statement, consent, notice, demand, request or other communication shall be deemed to have been rendered or given on the date when it shall have been hand delivered or three (3) Business Days from when it shall have been mailed as provided in this Article 26. Anything contained herein to the contrary notwithstanding, any Tax Statement or any other bill, statement, consent, notice, demand, request or other communication from Landlord to Tenant with respect to any item of Rental (other than any "default notice" if required hereunder) may be sent to Tenant by regular United States mail.

## ARTICLE 27
## REAL ESTATE TAXES

Section 27.1. For the purposes of this Article 27, the following terms shall have the meanings set forth below.

(A) "Assessed Valuation" shall mean the amount for which the Real Property is assessed pursuant to applicable provisions of the New York City Charter and of the Administrative Code of the City of New York for the purpose of calculating all or any portion of the Taxes payable with respect to the Real Property.

(B) "Taxes" shall mean the aggregate amount of real estate taxes and any general or special assessments imposed upon the Real Property (including, without limitation, (i) assessments made upon or with respect to any "air" and "development" rights now or hereafter appurtenant to or affecting the Real Property, (ii) any fee, tax or charge imposed by any Governmental Authority for any vaults, vault space or other space within or outside the boundaries of the Real Property, and (iii) any taxes or assessments levied after the date of this Lease in whole or in part for public benefits to the Real Property or the Building, including, without limitation, any Business Improvement District taxes and assessments) without taking into account any discount that Landlord may receive by virtue of any early payment of Taxes; provided, that if because of any change in the taxation of real estate, any other tax or assessment, however denominated (including, without limitation, any franchise, income, profit, sales, use, occupancy, gross receipts or rental tax) is imposed upon Landlord or the owner of the Real Property or the Building, or the occupancy, rents or income therefrom, in substitution for any of the foregoing Taxes, such other tax or assessment shall be deemed part of Taxes computed as if Landlord's sole asset were the Real Property. With respect to any Tax Year, all expenses, including attorneys' fees and disbursements, experts' and other witnesses' fees, incurred in contesting the validity or amount of any Taxes or in obtaining a refund of Taxes shall be considered as part of the Taxes for such Tax Year. Anything contained herein to the contrary notwithstanding, Taxes shall not be deemed to include (w) any taxes on Landlord's income, (x) franchise taxes, (y) estate or inheritance taxes or (z) any similar taxes imposed on Landlord, unless such taxes are levied, assessed or imposed in lieu of or as a substitute for the whole or any part of the taxes, assessments,



levies, impositions which now constitute Taxes.

(C) "Tax Statement" shall mean a statement in reasonable detail setting forth the Tax Payment for a Tax Year.

(D) "Tax Year" shall mean the period July 1 through June 30 (or such other period as hereinafter may be duly adopted by the Governmental Authority then imposing taxes as its fiscal year for real estate tax purposes), any portion of which occurs during the Term.

Section 27.2. (A) Commencing on the Commencement Date, Tenant shall pay as additional rent for each Tax Year, Eighty (80%) percent of all Taxes for such Tax Year (the "Tax Payment"). The Tax Payment shall be payable in advance, and not in arrears, so that Landlord shall have received Tenant's Share of Taxes for a Tax Year prior to the date the corresponding Taxes are required to be paid by Landlord to the applicable Governmental Authorities. Tenant shall be obliged to pay the Tax Payment regardless of whether Tenant is exempt in whole or part, from the payment of any Taxes by reason of Tenant's diplomatic status or for any other reason whatsoever. The Taxes shall be computed initially on the basis of the Assessed Valuation in effect at the time the Tax Statement is rendered (as the Taxes may have been settled or finally adjudicated prior to such time) regardless of any then pending application, proceeding or appeal respecting the reduction of any such Assessed Valuation, but shall be subject to subsequent adjustment as provided in Section 27.3 hereof.

(B) At any time during or after the Term, Landlord may render to Tenant a Tax Statement or Statements showing the amount of the Tax Payment. On the first day of the month following the furnishing to Tenant of a Tax Statement, Tenant shall pay to Landlord a sum equal to one-twelfth ( 1 /12th) of the T ax Payment shown thereon to be due for such Tax Year multiplied by the number of months of the Term then elapsed since the commencement of such Tax Year. Tenant shall continue to pay to Landlord a sum equal to one-twelfth (1/12th) of the Tax Payment shown on such Tax Statement on the first day of each succeeding month until the first day of the month following the month in which Landlord shall deliver to Tenant a new Tax Statement. If Landlord furnishes a Tax Statement for a new Tax Year subsequent to the commencement thereof, promptly after the new Tax Statement is furnished to Tenant, Landlord shall give notice to Tenant stating whether the amount previously paid by Tenant to Landlord for the current Tax Year was greater or less than the installments of the Tax Payment for the current tax year in accordance with the Tax Statement, and (a) if there shall be a deficiency, Tenant shall pay the amount thereof within thirty (30) days after demand therefor, or (b) if there shall have been an overpayment, Landlord shall credit the amount thereof against the next monthly installments of the Fixed Rent payable under this Lease. Tax Payments shall be collectible by Landlord in the same manner as Fixed Rent. Landlord's failure to render a Tax Statement shall not prejudice Landlord's right to render a Tax Statement during or with respect to any subsequent Tax Year, and shall not eliminate or reduce Tenant's obligation to make Tax Payments for such Tax Year. Landlord will use its best efforts to provide Tenant with a copy of the tax bill.



Section 27.3. Only Landlord shall be eligible to institute tax reduction or other proceedings to reduce the Assessed Valuation. In the event that, after a Tax Statement has been sent to Tenant, an Assessed Valuation which had been utilized in computing the Taxes for a Tax Year is reduced (as a result of settlement, final determination of legal proceedings or otherwise), and as a result thereof a refund of or credit against Taxes is actually received by or on behalf of Landlord, then, promptly after receipt of such refund or credit, Landlord shall send Tenant a Tax Statement adjusting the Taxes for such Tax Year (taking into account the expenses incurred in obtaining such refund), and setting forth Tenant's Share of such refund and Tenant shall be entitled to receive such Share, at Landlord's option, either by way of a credit against the Fixed Rent next becoming due after the sending of such Tax Statement or by a refund to the extent no further Fixed Rent is due; provided, however, that Tenant's Share of such refund shall be limited to the portion of the Tax Payment, if any, which Tenant had theretofore paid to Landlord attributable to Taxes for the Tax Year to which the refund is applicable on the basis of the Assessed Valuation before it had been reduced.

Section 27.4. The expiration or termination of this Lease during any Tax Year shall not affect the rights or obligations of the parties hereto respecting any payments of Tax Payments for such Tax Year, and any Tax Statement relating to such Tax Payment, may be sent to Tenant subsequent to, and all such rights and obligations shall survive, any such expiration or termination. In determining the amount of the Tax Payment for the Tax Year in which the Term shall commence or expire, the payment of the Tax Payment for the Tax Year shall be prorated based on the number of days of the Term which fall within such Tax Year, as the case may be. Any payments due under such Tax Statement shall be payable within twenty (20) days after such Statement is sent to Tenant.

## ARTICLE 28
### SERVICES

Section 28.1. Except as expressly provided in this Article 28, Landlord shall not be required to provide any services to the Premises.

Section 28.2. Tenant shall be responsible for its own maintaining the HVAC system at Tenant's sole cost and expense. The Units shall be installed by Landlord at its own cost and expense and vented in locations and manners designated by Landlord. Tenant, at its sole cost and expense, shall maintain, repair and, when necessary, replace the Units (and all appurtenant structures) throughout the Term in a first-class manner. At all times during the Term, Tenant shall maintain a maintenance contract for the Units and the appurtenances thereto, which contract and contractor thereunder shall be subject to Landlord's approval in Landlord's reasonable discretion. Tenant shall not make any alterations or replacements to the Units or their appurtenances without the prior written consent of Landlord, which consent Landlord may withhold in it sole discretion. Tenant shall indemnify, defend and save and hold Landlord harmless from and against any and all losses, costs, demands, liabilities and expenses (including, without limitation, attorneys' fees and disbursements) which Landlord may incur arising out of or in

41



connection with the Units and their appurtenances, Tenant's operation of, or alterations or repairs to, or replacement of, the Units and their appurtenances, including, without limitation, any damage to the roof and any leaks into the Building (including any space of any other tenant). Landlord, throughout the Term, shall have free access to any and all mechanical installations of Landlord, including, but not limited to, air-cooling, fan, ventilating and machine rooms and electrical closets; Tenant shall not construct partitions or other obstructions which may interfere with Landlord's free access thereto, or interfere with the moving of Landlord's equipment to and from the enclosures containing said installations. Neither Tenant, nor its agents, employees or contractors shall at any time enter the said enclosures or tamper with, adjust or touch or otherwise in any manner affect said mechanical installations. Tenant shall at all times cooperate fully with Landlord and abide by all of the regulations and requirements which Landlord may prescribe for the proper functioning and protection of the HVAC System.

Section 28.3. (A) Tenant, at Tenant's sole cost and expense, shall cause the Premises to be cleaned daily in a manner satisfactory to Landlord, and to be exterminated against infestation by vermin, rodents or roaches regularly and, in addition, whenever there shall be evidence of any infestation. Any such exterminating shall be done at Tenant's sole cost and expense, in a manner reasonably satisfactory to Landlord, and by Persons reasonably approved by Landlord. Tenant, at Tenant's sole cost and expense, shall cause snow, ice and debris to be promptly removed from the sidewalk areas in front of the Building. Tenant shall comply with any recycling program and/or refuse disposal program (including, without limitation, any program related to the recycling, separation or other disposal of paper, glass or metals) which Landlord shall impose or which shall be required pursuant to any Requirements. Trash shall be placed by Tenant in a location within the Premises until the same is carted away, at Tenant's expense. Tenant shall comply with all Requirements and Rules and Regulations regarding the disposal of medical waste including, but not limited to (i) the disposal of trash and (ii) the cleaning and maintenance of all plumbing pipes and fixtures. On the Expiration Date, Tenant shall remove all medical waste from the Premises including, but not limited to the flushing of plumbing lines, in a manner reasonably satisfactory to Landlord.

(B)     Tenant shall be solely responsible for (i) the daily cleaning and maintenance of the Premises, including without limitation, the hallways, stairwells, first floor lobby and second floor lobby and maintain contracts for (ii) the maintenance of the elevator, which contracts and contractors thereunder shall be subject to Landlord's approval in Landlord's reasonable discretion. The cost and expense of such cleaning and maintenance contracts shall be borne solely by Tenant.

Section 28.4. Intentionally Omitted.

Section 28.5. Landlord shall provide cold water to a point of entry in the Building, through existing facilities. Tenant shall install a water meter and thereby measure Tenant's water consumption. Tenant shall pay Landlord for the cost of the meter and the cost of the installation thereof and through the duration of Tenant's occupancy Tenant shall keep said and equipment in good working order and re·air at Tenant's own cost and expense. Tenant shall pay for water consumed as shown on said meter, to



Landlord, as additional rent, and Tenant shall pay as additional rent, with respect to the Premises only, the sewer rent, charge or any other tax, rent, levy or charge which now or hereafter is assessed, imposed or shall become a lien upon the Premises or the Real Property of which they are a part pursuant to any Requirement made or issued in connection with any such metered use, consumption, maintenance or supply of water, water system, or sewage or sewage connection or system. The bill rendered by Landlord for the above shall be based upon Tenant's consumption and shall be payable by Tenant as additional rent within thirty (30) days after rendition. If Tenant shall require more water capacity than that provided by existing facilities, then Tenant shall pay for the cost of providing such additional capacity (including all meter and submeter costs) to the extent the same reasonably can be made available.

Section 28.6. Subject to the provisions of Section 4.3 hereof, Landlord reserves the right to stop service of the electrical, gas, plumbing or other Building Systems when necessary, by reason of accident or emergency, or for repairs, additions, alterations, replacements or improvements in the judgment of Landlord desirable or necessary to be made, until said repairs, alterations, replacements or improvements shall have been completed. Landlord shall have no responsibility or liability for interruption, curtailment or failure to supply electrical, gas, plumbing or other Building Systems when prevented by Unavoidable Delays or by any Requirement of any Governmental Authority or due to the exercise of its right to stop service as provided in this Article 28. The exercise of such right or such failure by Landlord shall not constitute an actual or constructive eviction, in whole or in part, or entitle Tenant to any compensation or, except as provided in Section 14.2 hereof, to any abatement or diminution of Rental, or relieve Tenant from any of its obligations under this Lease, or impose any liability upon Landlord or its agents by reason of inconvenience or annoyance to Tenant, or injury to or interruption of Tenant's business, or otherwise.

Section 28.7. Tenant shall be solely responsible, at its sole cost and expense, for all violations of all Requirements relating to environmental laws and hazardous or controlled substances caused by Tenant, its agents, employees, contractors, subcontractors, materialmen, licensees, invitees and visitors, shall not permit any violation of any such Requirements, and shall indemnify Landlord against any claim of violation of the same.

Section 28.8. Tenant shall not permit any medical waste or other substances provided in connection with Tenant's permitted usage of the Premises to be disposed of in any manner which violates Requirements or interferes with the use and enjoyment of any portion of the Real Property or adjoining Properties by any tenant or occupant thereof, or interference's with the operation of any Building System or other equipment, Tenant shall install adequate filters or other devices to ensure compliance with the provisions of this Section and shall indemnify Landlord against any claimed violation hereof.



## ARTICLE 29

Intentionally Omitted.

## ARTICLE 30
### VAULT SPACE

Notwithstanding anything contained in this Lease or indicated on any sketch, blueprint or plan, any vaults, vault space or other space outside the boundaries of the Real Property are not included in the Premises. Landlord makes no representation as to the location of the boundaries of the Real Property which Tenant may be permitted to use or occupy are to be used or occupied under a revocable license, and if any such license shall be revoked, or if the amount of such space shall be diminished or required by any Governmental Authority or by any public utility company, such revocation, diminution or requisition shall not constitute an actual or constructive eviction, in whole or in part, or entitle Tenant to any abatement or diminution of Rental, or relieve Tenant from any of its obligations under this Lease, or impose any liability upon Landlord. Any fee, tax or charge imposed by any Governmental Authority for any such vaults, vault space or other space occupied by Tenant shall be paid by Tenant.

## ARTICLE 31
### RENEWAL TERM

Section 31.1  Tenant shall have the option (the "Renewal Option") to extend the term of this Lease for one (1) additional period of ten (10) years (the "Renewal Term") which shall commence on the date immediately succeeding the Fixed Expiration Date and end on the fifteenth (15th) anniversary of the Fixed Expiration Date, provided that (a) this Lease shall not have been previously terminated, (b) no Event of Default shall have occurred and be continuing (x) on the date Tenant gives Landlord written notice (the "Renewal Notice") of Tenant's election to exercise the Renewal Option, and (y) on the Fixed Expiration Date, and (c) Tenant shall occupy the entire Premises for the conduct of its business on the date the Renewal Notice is given and on the first (1st) day of the Renewal Term. The Renewal Option may be exercised with respect to the entire Premises only and shall be exercisable by Tenant delivering the Renewal Notice to Landlord at least not earlier than eighteen (18) months prior to the Fixed Expiration Date. and not later than twelve (12) months prior to the Fixed Expiration Date. Time is of the essence with respect to the giving of the Renewal Notice. Upon the giving of the Renewal Notice in respect of the Renewal Term, Tenant shall have no further right or option to extend or renew the Term

Section 31.2.  If Tenant exercises the Renewal Option, the Renewal Term shall be upon the same terms, covenants and conditions as those contained in this Lease, except



that (i) the Fixed Rent shall be deemed to mean the Fixed Rent as determined pursuant to Section 31.3 hereof for the Renewal Term, and (ii) the provisions of this Article 31 relative to Tenant's right to renew the Term of this Lease shall not be applicable during the Renewal Term.

Section 31.3. For the Renewal Term the Fixed Rent shall be determined as follows:

If Tenant herein exercises the said option to extend this Lease for a period of Ten (10) years as aforesaid the Rent reserved hereunder for the additional period of Ten (10) years shall mean the "Market Value Rent" which shall mean the annual fair market rental value of the demised premises as of the commencement date of the renewal term. Said Market Value Rent shall be determined as follows:

(a) The initial determination of Market Value Rent shall be made by Owner. Owner shall give notice to the Tenant of the proposed Market Value Rent within thirty (30) days after Tenant notifies Owner of it exercise of its option to renew. If Owner and Tenant shall fail to agree on the Market Value Rent proposed by Owner within fifteen (15) days, then Owner and Tenant shall each give notice to the other setting forth the name and address of an arbitrator designated by the party giving such notice. If either party shall fail to give notice of such designation within fifteen (15) days, then the arbitrator chosen shall make the determination alone. If two arbitrators shall have been designated, such two arbitrators shall make their determination of Market Value Rent in writing and give notice thereof to each other and to the Owner and the Tenant. Such two arbitrators shall have fifteen (15) days after the receipt of notice of each other's determination to confer with each other and to attempt to reach agreement as to the determination of Market Value Rent. If such two arbitrators shall concur as to the determination of the Market Value Rent, such concurrence shall be final and binding upon Owner and Tenant. If such two arbitrators shall fail to concur, then such two arbitrators shall immediately designate a third arbitrator. If the two arbitrators shall fail to agree upon the designation of such third arbitrator within five (5) days, then either party may apply to the American Arbitration Association or any successor thereto having jurisdiction for the designation of such arbitrator. All arbitrators shall be real estate appraisers or consultants who shall have had at least fifteen (15) years continuous experience in the business of appraising or managing real estate or acting as real estate agents or brokers in the Borough of Bronx, City of New York, The third arbitrator shall conduct such hearings and investigation as he may deem appropriate and shall, within thirty (30) days after the commencement date of the renewal term (or the date of designation of the third arbitrator if designated by the American Arbitration Association), choose one of the determinations of the two arbitrators originally selected by the parties, and that choice by the third arbitrator shall be binding upon Owner and Tenant. Each party shall pay its own counsel fees and expenses, if any, in connection with any arbitration under this paragraph, including the expense and fees of any arbitrator selected by it in accordance with the provisions of this Article, and the parties shall share equally all other expenses and fees of any such arbitration. The determination rendered in accordance with the provisions of this paragraph shall be final and binding in fixing the Market Value Rent. The arbitrators shall not have the power to add to, modify or change any of the provisions of this Lease.

45



In no event however shall the Fixed Rental rent as determined for the first year of the Renewal Term be less than the Fixed Rent of the thirteenth year of the term of this lease.

(b) If for any reason the Market Value Rent shall not have been determined prior to the commencement date of the renewal term, then until the Market Value Rent and, accordingly, the Fixed Annual Rent and all Additional Rent payable subsequent to the commencement date of the renewal term shall be equal to the Market Value Rent and additional Rent proposed by Owner, plus the Additional Rent then payable by Tenant. Upon such final determination, an appropriate adjustment shall be made reflecting such final determination, and Owner and Tenant, as the case may be, shall pay the other any overpayment or deficiency, as the case may be, from the commencement date of the renewal term to the date of such final determination.

Section 31.3   The Fixed Rent for the first year of the Renewal Term shall be the Rent as determined in Section 31.3, and on each ensuing anniversary of such date (each, an "Escalation Date") the Fixed Rent per annum shall be an amount equal to (x) the Fixed Rent per annum payable on the date immediately preceding the applicable Escalation Date (as the same shall have been previously increased by reason of the application of this Section 1.1 (ii) (the "Immediately Preceding Rent"), plus (y) a three (3%) percent increase in the Immediately Preceding Rent.

## ARTICLE 32
## CAPTIONS

The captions are inserted only as a matter of convenience and for reference and in no way define, limit or describe the scope of this Lease nor the intent of any provision thereof.

## ARTICLE 33
## PARTIES BOUND

The covenants, conditions and agreements contained in this Lease shall bind and inure to the benefit of Landlord and Tenant and their respective legal representatives, successors, and, except as otherwise provided in this Lease, their assigns.

## ARTICLE 34
## BROKER

Each party represents and warrants to the other that it has not dealt with any broker or Person in connection with this Lease. The execution and delivery of this Lease by each party shall be conclusive evidence that such party has relied upon the foregoing representation and warranty. Each party shall indemnify and hold the other harmless from and against any and all claims for commission, fee or other compensation by any Person who shall claim to have dealt with the indemnifying party in connection with this

46



Lease and for any and all costs incurred by the indemnified party in connection with such claims, including, without limitation, reasonable attorneys' fees and disbursements. The provisions of this Article 34 shall survive the Expiration Date.

## ARTICLE 35
## INDEMNITY

Section 35.1. (A) Tenant shall not do or permit any act or thing to be done upon the Premises which may subject Landlord to any liability or responsibility for injury, damages to persons or property or to any liability by reason of any violation of any Requirement, and shall exercise such control over the Premises as to fully protect Landlord against any such liability. Tenant shall indemnify and save the Indemnitees harmless from and against (a) all claims of whatever nature against the Indemnitees arising from any act, omission or negligence of Tenant, its contractors, licensees, agents, servants, employees, invitees or visitors, (b) all claims against the Indemnitees arising from any accident, injury or damage whatsoever caused to any person or to the property of any person and occurring during the Term in or about the Premises, ( c) all claims against the Indemnitees arising from any accident, injury or damage occurring outside of the Premises but anywhere within or about the Real Property , where such accident, injury or damage results or is claimed to have resulted from an act, omission or negligence of Tenant or Tenant's contractors, licensees, agents, servants, employees, invitees or visitors, and (d) any breach, violation or non-performance of any covenant, condition or agreement in this Lease set forth and contained on the part of Tenant to be fulfilled, kept, observed and performed. This indemnity and hold harmless agreement shall include indemnity from and against any and all liability , fines, suits, demands, costs and expenses of any kind or nature (including, without limitation, attorneys' fees and disbursements) incurred in or in connection with any such claim or proceeding brought thereon, and the defense thereof.

(B)     Landlord shall indemnify and save Tenant, its shareholders, directors, officers, Partners, employees and agents harmless from and against all claims against Tenant arising from any direct damage to the Premises and any bodily injury to Tenant's employees, agents, employees, contractors, or invitees resulting from the acts, omissions or negligence of Landlord or its agents. This indemnity and hold harmless agreement shall include indemnity from and against any and all liability, fines, suits, demands, costs and expenses of any kind or nature (including, without limitation, reasonable attorneys' fees and disbursements) incurred in or in connection with any such claim or proceeding brought thereon, but shall be limited to the extent any insurance proceeds collectible by Tenant or such injured party with respect to such damage or injury are insufficient to satisfy same. Landlord shall have no liability for any consequential damages suffered either by Tenant or by any party claiming through Tenant.

Section 35.2. If any claim, action or proceeding is made or brought against Landlord, which claim, action or proceeding Tenant shall be obligated to indemnify Landlord against pursuant to the terms of this Lease, then, upon demand by Landlord, Tenant, at its sole cost and expense, shall resist or defend such claim, action or proceeding in Landlord's name, if necessary , by such attorneys as Landlord shall



approve, which approval shall not be unreasonably withheld. Attorneys for Tenant's insurer are hereby deemed approved for purposes of this Section 35.2. The provisions of this Article 35 shall survive the expiration or earlier termination of this Lease.

## ARTICLE 36
## ADJACENT EXCAVATION-SHORING

If an excavation shall be made upon land adjacent to the Premises, or shall be authorized to be made, Tenant, upon reasonable advance notice, shall afford to the person causing or authorized to cause such excavation, a license to enter upon the Premises for the purpose of doing such work as said person shall deem necessary to preserve the wall or the Building from injury or damage and to support the same by proper foundations, without any claim for damages or indemnity against Landlord, or diminution or abatement of Rental, provided that Tenant shall continue to have access to the Premises and the Building.

## ARTICLE 37
## MISCELLANEOUS

Section 37.1. This Lease is offered for signature by Tenant and it is understood that this Lease shall not be binding upon Landlord or Tenant unless and until Landlord and Tenant shall have executed and unconditionally delivered a fully executed copy of this Lease to each other.

Section 37.2. The obligations of Landlord under this Lease shall not be binding upon Landlord named herein after the sale, conveyance, assignment or transfer by such Landlord (or upon any subsequent landlord after the sale, conveyance, assignment or transfer by such subsequent landlord) of its interest in the Building or the Real Property, may be, and in the event of any such sale, conveyance, assignment or transfer, Landlord shall be and hereby is as the case entirely freed and relieved of all covenants and obligations of Landlord hereunder. The partners, members, managers, shareholders, directors, officers and principals, direct and indirect, comprising Landlord (collectively, the "Parties") shall not be liable for the performance of Landlord's obligations under this Lease. Tenant shall look solely to Landlord to enforce Landlord's obligations hereunder and shall not seek any damages against any of the Parties. The liability of Landlord for Landlord's obligations under this Lease shall be limited to Landlord's interest in the Real Property and Tenant shall not look to any other property or assets of Landlord or the property or assets of any of the Parties in seeking either to enforce Landlord's obligations under this Lease or to satisfy a judgment for Landlord's failure to perform such obligations.

Section 37.3. Notwithstanding anything contained in this Lease to the contrary, all amounts payable by Tenant to or on behalf of Landlord under this Lease, whether or not expressly denominated Fixed Rent, Escalation Rent, additional rent or Rental, shall constitute rent for the purposes of Section 502(b)(7) of the Bankruptcy Code.



Section 37.4. Tenant's liability for all items of Rental shall survive the Expiration Date.

Section 37.5. Tenant shall reimburse Landlord as additional rent, within ten (10) days after rendition of a statement, for all expenditures made by, or damages or fines sustained or incurred by, Landlord, due to any default by Tenant under this Lease, with interest thereon at the Applicable Rate.

Section 37.6. This Lease shall not be recorded; however, at the request of Either party Landlord and Tenant shall promptly execute, acknowledge and deliver a memorandum with respect to the Lease sufficient for recording (provided that, simultaneously therewith, Tenant shall also execute, acknowledge and deliver to Landlord a termination of such memorandum, which termination shall be held in escrow by Landlord and released and recorded only on the expiration or sooner termination of this Lease.

Section 37.7. Tenant hereby waives any claim against Landlord which Tenant may have based upon any assertion that Landlord has unreasonably withheld or unreasonably delayed any consent or approval requested by Tenant, and Tenant agrees that its sole remedy shall be an action or proceeding to enforce any related provision or for specific performance, injunction or declaratory judgment. In the event of a determination that such consent or approval has been unreasonably withheld or delayed, the requested consent or approval shall be deemed to have been granted; however, Landlord shall have no liability to Tenant for its refusal or failure to give such consent or approval. Tenant's sole remedy for Landlord's unreasonably withholding or delaying consent or approval shall be as provided in this Section 37.7.

Section 37.8. This Lease contains the entire agreement between the parties and supersedes all prior agreements understandings or representations, if any, with respect thereto between Landlord and Tenant or any affiliate of Tenant (including, without limitation), and any members, managers or agents of each of them, all of which agreements are now void and merged into this Lease. This Lease shall not be modified, changed, or supplemented, except by a written instrument executed by both parties. The provisions of this Section 38 shall survive the expiration or sooner termination of the Term.

Section 37.9. Intentionally Omitted

Section 37.10. (A) All of the Schedules and Exhibits attached hereto are incorporated in and made a part of this Lease, but, in the event of any inconsistency between the terms and provisions of this Lease and the terms and provisions of the Schedules and Exhibits hereto, the terms and provisions of this Lease shall control. Wherever appropriate in this Lease, personal pronouns shall be deemed to include the other genders and the singular to include the plural. All Article and Section references set forth herein shall, unless the context otherwise specifically requires, be deemed references to the Articles and Sections of this Lease.



(B) If any term, covenant, condition or provision of this Lease, or the application thereof to any person or circumstance, shall ever be held to be invalid or unenforceable, then in each such event the remainder of this Lease or the application of such term, covenant, condition or provision to any other Person or any other circumstance (other than those as to which it shall be invalid or unenforceable) shall not be thereby affected, and each term, covenant, condition and provision hereof shall remain valid and enforceable to the fullest extent permitted by law.

(C) All references in this Lease to the consent or approval of Landlord shall be deemed to mean the written consent or approval of Landlord and no consent or approval of Landlord shall be effective for any purpose unless such consent or approval is set forth in a written instrument executed by Landlord.

Section 37.11. Tenant represents and warrants that it will promptly commence the process of making application for all licenses, permits and approvals required by Tenant for the operation of its business at the Premises, and will pursue such applications diligently. Upon issuance of said licenses, permits and approvals, Tenant shall maintain the same in full force and effect at all times during the Term. At Landlord's request from time to time, Tenant shall deliver to Landlord true, complete and correct copies of applications, licenses, permits and approvals.

Section 37.12. Notwithstanding anything to the contrary contained in this Lease, Landlord shall have no obligation to provide security to the Premises. Tenant shall be responsible, at Tenant's expense, for all security in the Premises including, without limitation, all alarm systems.

## ARTICLE 38
## RENT CONTROL

If at the commencement of, or at any time or times during the Term of this Lease, the Rental reserved in this Lease shall not be fully collectible by reason of any Requirement, Tenant shall enter into such agreements and take such other steps (without additional expense to Tenant) as Landlord may request and as may be legally permissible to permit Landlord to collect the maximum rents which may from time to time during the continuance of such legal rent restriction be legally permissible (and not in excess of the amounts reserved therefor under this Lease). Upon the termination of such legal rent restriction prior to the expiration of the Term, (a) the Rental shall become and thereafter be payable hereunder in accordance with the amounts reserved in this Lease for the periods following such termination, and (b) Tenant shall pay to Landlord, if legally permissible, an amount equal to (i) the items of Rental which would have been paid pursuant to this Lease but for such legal rent restriction less (ii) the rents paid by Tenant to Landlord during the period or periods such legal rent restriction was in effect.



## ARTICLE 39
## TENANTS SIGNS

Intentionally Omitted

## ARTICLE 40
## OPERATING COVENANTS

Tenant's advertising and public relations, if any, shall not diminish or detract from the character and reputation of the Building and shall meet the quality and standards in keeping with the caliber of the medical offices to be operated at the Premises in accordance with Section 2.1 hereof.

## ARTICLE 41
## GUARANTY

Intentionally Omitted.

## ARTICLE 42
## RENT CREDIT

Provided Tenant shall not then be in default under any of the terms, covenants, or conditions of this Lease on Tenant's part to be observed or performed, Tenant shall be entitled to an aggregate rent credit in the amount of One Hundred Twenty Four Thousand Five-Hundred ($124,500.00) Dollars, which may only be applied against the first three monthly installments of Fixed Rental accruing hereunder.

## ARTICLE 43
## ADDITIONAL RENT CREDIT

Provided Tenant shall not then be in default under any of the material terms, covenants, or conditions of this Lease on Tenant's part to be observed or performed, Tenant shall be entitled to a rent credit in addition to the credit as set forth in Article 42 hereof of Twenty Five Thousand ($25,000.00) Dollars per month until the Premises are inspected by the NYS Health Department and meet the requirements of Article 28 subject to the following conditions:

(A) Landlord obligates to perform all necessary work in the Premises to comply with NYS Health Department Article 28 requirements. Tenant agrees that within thirty (30) days from the execution of this Lease it shall commence an application to the NYS Health Department for Article 28 approval.

(B) Such work of Landlord to include but not limited to Installation of HVAC, elevators, handicap access, building out second floor, electric, plumbing all to Tenant's specifications. In no event shall Landlord be required or obligated to

51



expend in excess of Three Hundred Thousand ($300,000.00) Dollars. Tenant agrees that it shall pay any and all costs associated therewith in excess of Three Hundred Thousand ($300,000.00) Dollars.

(C) Tenant shall be entitled to a rent credit of Twenty Five Thousand ($25,000.00) Dollars per month, as stated above, provided:
    (i)   It shall promptly submit said application;
    (ii)  cooperate fully and promptly with Landlord in submitting its requirements and specifications to Landlord;
    (iii) allow Landlord full access to Premises and fully cooperate with Landlord in allowing work to be performed.
    (iv) promptly pay for any excess cost over the Three Hundred Thousand ($300,000.00) Dollars upon demand.

(D) The rent credit of Twenty Five Thousand ($25,000.00) Dollars per month shall cease upon the approval of the NYS Health Department as an Article 28 full time extension clinic, or one (1) year from the date of submission of Tenant's application or two (2) Years from the Commencement of the Lease which ever comes first. Said rent credit shall be apportioned.

(E) Notwithstanding the provisions of Article 43 (D), in the event that the NYS Health Department has a moratorium on approvals of Article 28 facilities, then in that event, commencing one (1) year from the date of submission of Tenant's application Tenant shall be entitled to a rent credit of Twenty One Thousand Five Hundred ($21,500.00) Dollars which shall cease upon the NYS Health Department approval as an Article 28 full time extension clinic, or two (2) years from the date of the Commencement of the Lease which ever come first. Said rent credit shall be apportioned.

## ARTICLE 44
## PREPAID RENT

The Tenant has simultaneously with the signing of this Lease paid to the Landlord the sum of $16,500.00 (rent of $41,500.00 less $25,000.00 credit) by certified check as prepaid rent to be applied by Landlord to the Fixed Rental for the fourth month of the term of this Lease.

## ARTICLE 45
## FORCE MAJEURE

In the event that, due to circumstances not reasonably within the control of Tenant, such as, but no limited to: war; riot; major disaster or epidemic; governmental actions or inaction's; the implementation of healthcare related laws, rules, regulations or mandates of governing entities or other uncontrollable healthcare related charges; that Tenant is unable to operate a sustainable business at th. Demised Premises, Tenant shall have the right to terminate this Lease upon giving Lan lord six (6) months prior written notice of termination. If this Lease is terminated in accordance with this section, Tenant shall be



obligated to Landlord for the rental payments until the Tenant vacates the Demised Premises. Together with and included with such notice to Landlord, as a condition to such termination, Tenant shall enclose and remit to Landlord together with such notice of termination, as a termination fee, an amount equal to Four (4) months monthly Fixed Rent. In addition, thereto, and as a further condition to Tenant right to terminate as aforesaid, it shall forfeit any rights that it may have to its security deposit held by Landlord.

## ARTICLE 46
## MEDICAL EQUIPMENT & FURNITURE & FIXTURES

Tenant acknowledges that the Premises presently contain various medical and office furniture equipment and fixtures. Landlord makes no representation concerning the ownership of said equipment, furniture and fixtures. Tenant agrees that it will not remove or in any way dispose of said equipment with the prior written consent of the Landlord. Tenant agrees it will not cause any liens to be placed against said equipment. Tenant acknowledges that the Tenant shall not by virtue of said equipment being in the premises, obtain any rights to same. Landlord may remove any of said equipment without the Tenants consent, with thirty-(30) day's prior written notice. Tenant agrees to hold the Landlord, his agents and assigns harmless from any claim pertaining to said equipment or fixtures from anyone claiming title or damages to said equipment or fixtures which indemnity shall include indemnity from and against any and all liability, fines, suits, demands, costs and expenses of any kind or nature (including, without limitation, attorneys' fees and disbursements) incurred in or in connection with any such claim or proceeding brought thereon, and the defense thereof.

## ARTICLE 47
## USE AS DIAGNOSTIC AND TREATMENT CENTER

The Premises are to be used as a diagnostic and treatment center, as defined by Article 28 of the Public Health Law. The Premises will not be used for this purpose until receipt of final approval of the NYSDOH Public Health Council.

## ARTICLE 48
## 10 NY CODE RULES AND REGULATIONS SECTION 600.2(D)

The Landlord acknowledges that its right of reentry into the Premises set forth in this Lease do not confer on it the authority to operate a hospital as defined in Article 28 of the Public Health Law on the Premises, and agrees that it will give the New York State Department of Health, Tower Building, Empire State Plaza, Albany, NY 12237, notification by certified mail of its intent to reenter the Premises or it initiate dispossess proceedings or at least 60 days before the expiration of this Lease,

Upon receipt of notice from the Landlord of his intent to exercise its right of reenrty or upon the service of process in a dispossess proceeding, and 60 days prior to the expiration of the Lease, the Tenant shall immediately notify by certified mail the New



York State Department of Health, Tower Building, Empire State Plaza, Albany, NY 12237, of the receipt of such notice or service of such process or that the Lease is about to expire.

## ARTICLE 49
## RENTABLE SQUARE FEET

The rentable square feet of the Demised Premises is approximately 19,920 square feet. The Tenant has made its own measurement and evaluation of said square footage and agrees that the same is correct.

IN WITNESS WHEREOF, Landlord and Tenant have respectively executed this Lease as of the day and year first above written.

TOWNE PARTNERS, LLC, Landlord

By: Janusz Sendowski, a member

RJZM CORP., LLC

By: Robert Slingsby, CEO

JUN-05-2006 16:47 From:                                   9:17185154950        P.2/5

ADDENDUM T° LEASE

DATED   May 1, 2001

BETWEEN  TOWER PARTNERS, LLC

and  KJ2M, LLC  for  the 923

19, East 13th St., front, N.Y.

1. It is good. by and between the parties herein
that the tenant, KJ2M, LLC., may, at its option,
assign the entirety of this leam to an entity
owned by the designee of tenant and the
designee of Landlord, for purposes of operating
the facility.

Dated : May 1, 2001

Ebot. Savely, KJ2M, LLC.

Terry Serberty, Tower
Partners

2. Tenant shall be responsible for contractor 6th
above $300,00 or, for closent of portion, as
otherwise shall be asked as < divi of leans per per glement
of the Landlord

Robert Savely

Corporation
Schaft.

May 1, 2001

Terry Enderity

Exhibit B

# EXHIBIT B

RATTET, PASTERNAK & GORDON OLIVER, LLP
Attorneys for the Debtor
550 Mamaroneck Avenue
Harrison, New York 10528
(914) 381-7400
ROBERT L. RATTET (2947)
DAWN K. ARNOLD (0642)

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------X

In re:                                                  Chapter 11
                                                        Case No. 06 B 11535 (ALG)
RJZM LLC d/b/a ALL-MED &
REHABILITATION OF NEW YORK,

                              Debtor.
-------------------------------------------------------------X

TOWNE PARTNERS, LLC,

              Petitioner-Landlord,                      Adv. Pro. No. 06-01663 (ALG)

        - against -

RJZM CORP., LLC,
423 EAST 138ᵗʰ STREET
BRONX, NEW YORK 10451

                      Respondent.
-------------------------------------------------------------X

TOWNE PARTNERS, LLC,

              Petitioner-Landlord,                      Adv. Pro. No. 06-01664 (ALG)

        - against -

RJZM CORP., LLC,
437 EAST 138ᵗʰ STREET
BRONX, NEW YORK 10451

                      Respondent.
-------------------------------------------------------------X

STIPULATION AND ORDER RESOLVING (I) DEBTOR'S MOTION TO
REJECT LEASE FOR PREMISES KNOWN AS 437 EAST 138ᵀᴴ STREET,
BRONX, NEW YORK; (II) DEBTOR'S MOTION TO VACATE CERTAIN
JUDGMENTS; AND (III) MOTION OF TOWNE PARTNERS LLC TO
REMAND ADVERSARY PROCEEDINGS 06-01663 AND 06-01664

This stipulation (the "Stipulation") is made by and among RJZM LLC d/b/a All-Med & Rehabilitation of New York (the "Debtor") and Towne Partners LLC (the "Landlord") concerning the premises known as 423 East 138th Street, Bronx, New York (the "423 Premises") and 437 East 138th Street, Bronx, New York (the "437 Premises"), as follows,

WHEREAS, on or about May 1, 2001, the Landlord and Debtor entered into leases for (i) the premises known as 423 East 138th Street, Bronx, New York (the "423 Lease") for a term of fifteen years; and (ii) the premises known as 437 East 138th Street, Bronx, New York (the "437 Lease") for a term of fifteen years; and

WHEREAS, in or about August 30, 2005, the Landlord commenced proceedings against the Debtor in the Civil Court of the City of New York, Bronx County, Towne Partners LLC v. RJZM Corp., LLC, 423 East 138th Street, Bronx, New York, Index No. L&T 901485/2005, and Towne Partners LLC v. RJZM Corp., LLC, 437 East 138th Street, Bronx, New York, Index No. L&T 901484/2005 (collectively, the "State Court Proceedings"); and

WHEREAS, the Debtor interposed a Verified Answer, Affirmative Defenses and Counterclaims in the State Court Proceedings; and

WHEREAS, on or about June 30, 2006, a decision and order was entered, and subsequently amended on or about July 5, 2006, granting the Landlord possession of the 423 Premises and 437 Premises, and granting money judgments against the Debtor in the amount of $335,723.27 with respect to the 423 Lease and in the amount of $492,970.63 with respect to the 437 Lease; and

WHEREAS, on July 6, 2006 (the "Petition Date") the Debtor filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code and has continued to operate and manage its business as a debtor-in-possession under §§ 1107 and 108 of the Bankruptcy Code; and

2

WHEREAS, on or about July 18, 2006, the Debtor removed the State Court Proceedings to the Bankruptcy Court which were assigned adversary proceeding numbers 06-01663 and 06-01664, respectively (the "Adversary Proceedings"); and

WHEREAS, by motions dated August 16, 2006, the Landlord sought orders remanding the State Court Proceedings (the "Remand Motions") to state court, which the Debtor opposed; and

WHEREAS, by motions dated August 31, 2006, the Debtor sought orders vacating the judgments entered in the State Court Proceedings (the "Motions to Vacate Judgments"), which the Landlord opposed; and

WHEREAS, by motion dated August 31, 2006, the Debtor sought an order rejecting the 437 Lease (the "437 Lease Rejection Motion"), which the Landlord opposed; and

WHEREAS, by Order dated January 4, 2007, the Debtor's time to assume or reject the 423 Premises and the 437 Premises was extended through and including February 28, 2007; and

WHEREAS, the Debtor and the Landlord desire to settle the Remand Motions, the Motions to Vacate Default Judgments, the 437 Lease Rejection Motion and all issues surrounding the assumption or rejection of the 423 Lease and 437 Lease;

NOW, THEREFORE, IT IS HEREBY STIPULATED AND AGREED, by and among the Debtor and the Landlord as follows:

1.  The Debtor's time to assume or reject the lease for the 423 Premises is extended through and including the date of confirmation. The Plan of reorganization shall provide that the Debtor's time to assume or reject the Lease for the 423 Premises shall be further extended through and including August 31, 2008, subject to the terms herein. The Debtor has the right to continue in possession of the 423 Premises through August 31, 2008, subject to the terms herein.

3

Assumption is subject to the cure requirements of 11 U.S.C. § 365(b). If the Debtor has not assumed the 423 Lease and does not surrender possession of the 423 Premises by August 31, 2008, the Landlord shall be entitled, in addition to all of its other remedies at law and equity, to the exercise of its remedies in the event of holdover provided in Article 20 of the Lease, including the right to receive use and occupancy payments from the Debtor equal to one and a half (1 ½ ) times the applicable monthly rent, for each month and portion of each month that the Debtor holds over after August 31, 2008.

2.    The Debtor shall comply with all monetary and non-monetary provisions of the 423 Lease, which is hereby incorporated by reference as though fully set forth herein, through August 31, 2008, except that the lease is hereby amended to decrease the base rent in the amount of $2,000 per month, effective as of the first full month after Courtesy (as defined below) surrenders possession of the Courtesy Premises (as defined below) to the Landlord, intended as of March 31, 2007. Accordingly, the monthly base rent thereafter (if Courtesy vacates as of March 31, 2007) shall be as follows:

(a)    $46,708.62 per month for the months of February, 2007 and March, 2007, and $44,708.62 for the month of April 2007; and

(b)    $46,109.88 per month for the period May 2007 through April 2008; and

(c)    $47,553.17 per month for the period May 2008 through August 2008.

3.    The Debtor guarantees payment to the Landlord of current monthly base rent payments through February 29, 2008 regardless of possessory status. If the Debtor rejects the 423 Lease and turns over possession of the 423 Premises after March 1, 2008 after providing sixty days' written notice of same to the Landlord, the Debtor shall not be liable for any rent or

4

additional rent accruing thereafter under the 423 Lease. The Landlord's damages in the event of rejection are accounted for in the payments set forth herein.

4.    In the event the Debtor assumes the lease for the 423 Premises, such assumption is conditioned upon delivery to the Landlord of an additional security deposit in the amount of $138,329.61, and shall provide additional deposits, as applicable, to increase the security deposit each year the base rent increases under the lease in order to increase the security amount to an amount equal to three months' rent (i.e., an additional $4,329.87 shall be deposited for the period May 2008 through August 2008).

5.    The Debtor hereby surrenders possession of the 437 Premises (as indicated in the annexed Exhibit A) effective as of January 1, 2007. The 437 Lease is deemed rejected. The Landlord's damages are accounted for in the payments set forth herein.

6.    The Debtor shall surrender to the Landlord a certain room located in the 423 Premises that abuts the 437 Premises at the northern portion of the building, a description of which is annexed hereto as Exhibit B, currently utilized as an administrative office for the Debtor's Medical Director, in as-is condition, effective 30 days after the entry of this order.

7.    Within five business days after this Stipulation and Order are Entered and Docketed, the Debtor shall turn over to the Landlord a surrender agreement (the "Surrender Agreement") in the form previously provided by the Landlord, containing an original notarized signature by an authorized signatory of Courtesy Drugs and Surgical Corp., ("Courtesy"), an entity unaffiliated with the Landlord or the Debtor, concerning a portion of the building known as 423 East 138th Street, Bronx, NY, comprised of 550 square feet in the east quadrant of the first floor of said building, plus 300 square feet of storage space, for a total of 1250 square feet (the "Courtesy Premises"), which provides for surrender of the Courtesy Premises on or before 5:00

5

p.m. on March 31, 2007. Within three business days thereafter, the Landlord shall return an original notarized signature on the Surrender Agreement to Courtesy, with a copy to the Debtor. In the event Courtesy fails to surrender possession as indicated in the Surrender Agreement, the Landlord may commence eviction proceedings against Courtesy without further notice to the Debtor.

8.      In addition to the current monthly rent and additional rent, the Debtor shall pay the Landlord $450,000 (the "Buy-Out Payment") as follows:

(a) $50,000 (the "Confirmation Payment") which shall paid within three business days of the date of confirmation of a Plan of Reorganization, which date of confirmation shall occur within the time period from May 1, 2007 through September 15, 2007; plus

(b) $400,000 divided into fifteen monthly installments payable on the 20th day of each month from May, 2007 through August, 2008 (the "Monthly Payments"), except for the month in which the Confirmation Payment is made.

Accordingly, the schedule of all Monthly Payments and the Confirmation Payment, which together comprise the Buy-Out Payment, shall be:

| (2007) | |
|---|---|
| May 20th | $26,666.66 |
| June 20th | $26,666.66, or $50,000 within three business days of confirmation of a Plan of Reorganization, if the Confirmation Payment is made this month |
| July 20th | $26,666.66, or $50,000 within three business days of confirmation of a Plan of Reorganization, if the Confirmation Payment is made this month |
| August 20th | $26,666.66, or $50,000 within three business days of confirmation of a Plan of Reorganization, if the Confirmation Payment is made this month |
| September 20th | $26,666.66, or $50,000 within three business days of confirmation of a Plan of Reorganization, if the Confirmation Payment is made this month |
| October 20th | $26,666.66 |
| November 20th | $26,666.66 |
| December 20th | $26,666.66 |
| (2008) | |
| January 20th | $26,666.66 |
| February 20th | $26,666.66 |

6

| | |
|---|---|
| March 20th | $26,666.66 |
| April 20th | $26,666.66 |
| May 20th | $26,666.66 |
| June 20th | $26,666.66 |
| July 20th | $26,666.66 |
| August 20th | $26,666.76 |

If confirmation of a Plan of Reorganization is denied or deferred at a confirmation hearing held after the 20th day of the month, the Monthly Payment for such month shall then be immediately payable, if it has not by then already been paid. In the event the Debtor assumes the 423 Lease after February 28, 2008 and before August 31, 2008, any balance remaining on the Buy-Out Payment will continue to be paid through August 31, 2008. It is the intent of the parties that the Buy-Out Payment schedule remains consistent, and does not accelerate as a cure amount in the event the assumption of the lease occurs on a date earlier than August 31, 2008.

9.     The Landlord shall be entitled to a general unsecured claim in the amount of $250,000 to be paid in the same manner as other general unsecured claims under a Plan of Reorganization, except that at the Debtor's option, between August 31, 2008 and August 31, 2009, if the Debtor is not then in default of any monetary terms of this Stipulation or of the 423 Lease, the Debtor may purchase the Landlord's claim for a lump sum of $140,000 less any distributions previously received by the Landlord in respect of its general unsecured claim, provided that until such lump sum payment is made, the Debtor shall continue to make pro-rata distributions to the Landlord of its general unsecured claim in the amount of $250,000 pursuant to the provisions of the Plan of Reorganization. The Landlord hereby withdraws its claims filed in this case, including proof of claim forms entered on the claim register: claim # 28 in the amount of $884,360.69, claim # 29 in the amount of $884,360.69, and claim # 30 in the amount of $884,360.69.

7

10.    The Landlord shall vote in favor of any Plan of Reorganization that is supported by the Official Committee of Unsecured Creditors, provided that it reflects the terms of this Stipulation, and further provided that such Plan of Reorganization provides for the remand of the Adversary Proceedings upon confirmation, in order to permit the effectuation and enforcement of the terms of this Stipulation.

11.    The Landlord acknowledges all post-petition administrative rent and post-petition additional rent for the 423 Premises and the 437 Premises has been paid through January 31, 2007, except for a late fee payment on January 2007 rent for 423 Premises in the amount of $1,602.52, and interest on account of late payment of January 2007 rent for 423 Premises in the amount of $127.50, totaling $1,730.02 (the "Late Charges"), and further subject to the Debtor providing proof that the full $20,000 amount claimed to have been paid by Courtesy directly to the Landlord, which the Debtor has set off against the January rent, but of which the Landlord 's records reflect receipt of only $16,000 (the "Courtesy Set-off"), was in fact paid. The Debtor has advanced a $4,000 payment to the Landlord, which will be applied first against the Late Charges. If within 60 days the Debtor provides proof the full $20,000 Courtesy Set-off was paid, then the $2,269.98 remainder of the advance payment shall be applied as a credit against rent; if such proof is not so provided, then such $2,269.98 remainder of the advance shall be applied against the $4,000 discrepancy in the Courtesy Set-off, and the remaining unpaid $1,730.02 amount of such discrepancy, together with late fees in the amount of $240.00 and interest in the per diem amount of $1.12 per day for each day from January 1, 2007 until paid, shall become due and payable immediately as additional rent.

12.    The automatic stay is hereby modified for the limited purpose of permitting the Landlord to apply for issuance of a Warrant of Eviction, execution of which is stayed through

8

and including August 31, 2008 pursuant to the terms of this Stipulation and Order, except in the event of the Debtor's default in this Stipulation or of the 423 Lease as otherwise provided herein. Upon payment in full of the Buy-Out Payment and assumption of the 423 Lease, the Warrant of Eviction shall be deemed vacated.

13.    In the event of any default in the Debtor's obligations hereunder or under the lease; the automatic stay and/or plan injunction shall be modified to permit the Landlord to proceed to gain possession of the 423 Premises from the Debtor by the execution of a warrant of eviction or any other lawful means, except that the Landlord may not use self-help, but only after service of notice of default and expiration of ten day opportunity to cure served upon the Debtor and its counsel by overnight mail Attention: Michael Kane, 423 East 138th Street, Bronx, NY 10451; Attention: Dawn K. Arnold, Esq., Rattet, Pasternak & Gordon Oliver LLP, 550 Mamaroneck Avenue, Harrison, NY 10528; and email, MJKane2001@aol.com, RSlingsby@aol.com; rlr@mittslaw.com; darnold@rattetlaw.com, and facsimile, (718) 866-0183 and (914) 381-7400, with a copy served upon the Official Committee of Unsecured Creditors Committee by mail, email and facsimile, Attention: Walter Benzija, Esq. and Alan Halperin, Esq., Halperin Battaglia Raicht, LLP, 555 Madison Avenue, New York, New York 10022, wbenzija@halperinlaw.net, (212) 765-0964. In the event the last day of the cure period falls on a weekend day or a legal holiday, the last day of the cure period shall be the next business day.

14.    No failure on the part of the Landlord to exercise, and no delay in exercising, and no course of dealing with respect to, any right, power or remedy under this Stipulation or the 423 Lease, arising out of a breach or series of breaches of any of the provisions contained in this Stipulation or 423 Lease, or otherwise, shall operate as a waiver thereof, unless such waiver shall be contained in a writing signed by the Landlord; no waiver of any breach shall be deemed or

9

construed as a waiver of any other breach of the same or any other provision hereof or affect the enforceability of any part or all of this Stipulation; nor shall any single power or remedy under this Stipulation preclude any other or further exercise thereof or the exercise of any other right, power or remedy.

15.   The acceptance by Landlord of partial performance of any of the terms and conditions of this Stipulation shall not constitute an agreement, express or otherwise, to modify, change or alter the Stipulation or constitute a waiver by or estoppel against Landlord to insist upon full and complete performance of the terms of the Stipulation as written. By illustration and not by way of limitation, no partial payment no matter how substantial, nor any delay in vacating the 423 Premises, shall be deemed to be substantial compliance, i.e., no shortage of payment or delay in vacating the 423 Premises shall be considered to be *de minimis*.

16.     In addition to the rights and remedies of both parties specifically set forth herein, the Landlord shall retain all rights and remedies of any creditor in the event of any default by the Debtor in the terms of a confirmed Plan of Reorganization.

17.     Upon execution of this Stipulation, the Debtor shall also simultaneously execute a stipulation of discontinuance with prejudice of the lawsuit captioned RJZM, LLC d/b/a All-Med & Rehab of NY v. Towne Partners LLC, Index No. 24082/2005, pending in the Supreme Court of the State of New York, Bronx County, in substantially the form annexed hereto as Exhibit C.

18. The Landlord and Debtor irrevocably and unconditionally waive, release and forever discharges each other from any and all causes of action, administrative, civil complaints, actions, suits, debts, sums of money, accounts, controversies, agreements, liabilities, obligations, damages, or claims through the date of this Stipulation by reason of any matter arising out of,

10

relating to, or in connection with the 423 Lease and the 437 Lease, which shall be effective upon confirmation of the Debtor's Plan of Reorganization..

19.   The Landlord and Debtor shall pay their own attorneys' fees in connection with the negotiation of this Stipulation, the matters covered hereby and the preparation, review and revision of any documents necessary to effectuate this settlement, except to the extent otherwise expressly provided herein in paragraph 7 above.

20.   The Landlord and Debtor agree to execute such other documents and to take such other action as may be reasonably necessary to further the purposes of this Stipulation.

21.   This Stipulation may not be modified, amended or terminated except by an instrument in writing, signed by each of the Parties affected thereby. No failure to exercise, and no delay in exercising any right, remedy or power under this Agreement shall operate as a waiver thereof, nor shall any single or partial exercise of any right, remedy or power under this Agreement preclude any other or further exercise thereof, or exercise of any other right, remedy or power provided herein or by law or in equity.

22.   This Stipulation will be binding upon and inure to the benefit of the Landlord and the Debtor and their respective successors (whether by consolidation, merger or otherwise) and assigns. Except as otherwise provided herein, no subsequent alternation, amendment, change or addition to this Stipulation shall be binding upon any of the Parties unless in writing and signed by the party against whom enforcement is sought.

23.   If this Agreement is executed in counterparts, each counterpart shall be deemed an original and all counterparts so executed shall constitute one Agreement binding on all of the parties. This Agreement may be executed by original or facsimile signature, each of which shall be equally binding.

11

24.    The parties are authorized to enter into and execute such documents as may be necessary to effectuate the terms of this Stipulation

25.    The ten day stay of effective date of this order is waived, and the order becomes effective immediately.

26.    The Court shall retain jurisdiction with respect to all matters arising from or relating to the implementation of this Order, except that nothing herein shall be deemed in derogation of the Landlord's ability to exercise its remedies in state court as provided in paragraphs 12 and 13 above, to the extent not otherwise precluded by this agreement, the Bankruptcy Code, including the automatic stay provisions and the injunction imposed by the Plan of Reorganization, or an order of the Bankruptcy Court.

27.    The provisions of this Stipulation with respect to the 423 Premises shall become null, void and of no effect if a Plan of Reorganization meeting the requirements set forth at paragraph 10 of this Stipulation shall not have been confirmed by September 15, 2007, in the event of which the parties' respective pending Motions shall be heard on the Court's first available date.

28.    It is hereby acknowledged by each of the parties hereto that it has had the benefit of independent legal counsel of its own choosing in connection with the negotiation and execution of this Stipulation; that this Stipulation has been voluntarily entered into after complete investigation and understanding of the contents hereof; and, that the terms, conditions and covenants contained in this Stipulation are the product and result of extensive negotiations and efforts by and between the parties hereto and their legal counsel.

29.    By signing herein below, each of the signatories hereto thereby warrants and represents to the other party that such signatory has the authority to sign this Stipulation for the

12

respective party on whose behalf he or she has so signed herein below and that such party shall be bound hereby.

30. In the event that any provision, term, covenant or condition contained in this Stipulation shall be found or held by a court of competent jurisdiction to be unenforceable or prohibited in any jurisdiction, then such provision, term, covenant or condition shall be ineffective to the extent of such prohibition or unenforceability without invalidating the remaining provisions hereof or affecting the validity or enforceability of such provision in any other jurisdiction.

Dated: New York, New York
March 12, 2007

RATTET, PASTERNAK &
GORDON OLIVER, LLP
Attorneys for the Debtor

KUCKER & BRUH, LLP
Attorneys for Towne Partners, LLC

/s/ Dawn K. Arnold

By:_____
    Dawn K. Arnold (DKA-0642)
    550 Mamaroneck Avenue
    Harrison, New York 10528
    (914) 381-7400

/s/ Nativ Winiarsky

By:_____
    Nativ Winiarsky (NW-4979)
    747 Third Avenue
    New York, New York 10017
    (212) 869-5030

13

RJZM LLC d/b/a ALL-MED &
REHABILITATION OF NEW YORK,

    */s/ Michael Kane*

By: _____
    Michael Kane, President


## CONSENTED TO AND AGREED UPON:

HALPERIN BATTAGLIA RAICHT, LLC
Attorneys for the Committee of Unsecured Creditors

    */s/ Walter Benzija*

By: _____
    Walter Benzija (WB-0909)
    555 Madison Avenue
    New York, New York 10022
    (212) 765-9100


## SO ORDERED:

This 14th day of March, 2007

____/s/ Allan L. Gropper_____
HONORABLE ALLAN L. GROPPER
UNITED STATES BANKRUPTCY JUDGE

*Index No.*                     *Year 20*

SUPREME COURT OF T HE STATE OF NEW YORK
COUNTY OF NEW YORK

TOWNE PARTNERS, LLC,

                  Plaintiff,

        ·against·

RJZM, LLC d/b/a ALL-MED & REHAB OF
NEW YORK,

                Defendant.

## SUMMONS AND COMPLAINT

### KUCKER & BRUH, LLP
*Attorneys for*         **Plaintiff**

747 THIRD AVENUE
NEW YORK, NEW YORK 10017
(212) 869-5030

*Please refer all communications to:* Abner T. Zelman     *Esq.*

Pursuant to 22 NYCRR 130-1.1-a, the undersigned, an attorney admitted to practice in the courts of New York State, certifies that, upon information and belief and reasonable inquiry, (1) the contentions contained in the annexed document are not frivolous and that (2) if the annexed document is an initiating pleading, (i) the matter was not obtained through illegal conduct, or that if it was, the attorney or other persons responsible for the illegal conduct are not participating in the matter or sharing in any fee earned therefrom and that (ii) if the matter involves potential claims for personal injury or wrongful death, the matter was not obtained in violation of 22 NYCRR 1200.41-a.

*Dated:* 01/05/2009

Signature .........................................................
Abner T. Zelman
Print Signer's Name.......................................................

*Service of a copy of the within*                                      *is hereby admitted.*

*Dated:*

Attorney(s) for

**PLEASE TAKE NOTICE**

☐ that the within is a (certified) true copy of a
**NOTICE OF ENTRY**   entered in the office of the clerk of the within-named Court on                    20

☐ that an Order of which the within is a true copy will be presented for settlement to the
**NOTICE OF SETTLEMENT**   Hon.                                  , one of the judges of the within-named Court,
at
on                              20      , at                M.

*Dated:*

                                 **KUCKER & BRUH, LLP**

                 *Attorneys for*

*To:*                                              747 THIRD AVENUE
                                NEW YORK, NEW YORK 10017

# EXHIBIT 2

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

Index No.: 100108/09

------------------------------------------------X

TOWNE PARTNERS, LLC,

                    Plaintiff,

                                                    AFFIDAVIT OF SERVICE

          -against-

RJZM, LLC d/b/a ALL-MED & REHAB OF.
NEW YORK,
                         Defendant.
-------------------------------------------------X

State of New York    )
                     )ss.:
County of New York   )

I, Curtis Rhoden, being duly sworn, depose and say:

1)        I am not a party to this action; I am over 18 years of age and I reside in the County of the

Bronx, City and State of New York.

2)        On January 13, 2009 at 4:30PM at 4377 Bronx Boulevard, Bronx, New York 10467 I

served a true copy of the SUMMONS AND COMPLAINT in this action upon RJZM, LLC.

Attention Michael Kane or Leonard Doherty as officers or members of RJZM, LLC. I located the

premises and personally handed the papers to a female employee of RJZM, LLC who accepted

willingly on behalf of Mr. Kane and Mr. Doherty, for RJZM, LLC.

3)        The person who accepted the papers can be described as a white female, light brown hair,

5'5" to 5'8" tall, 50 to 60 years old, and 135 to 160 Lbs. A copy of their business card is attached

as Exhibit "A".

4)        On January 16, 2009 I also served by mail a true copy of the SUMMONS AND

COMPLAINT to RJZM, LLC, Attention Michael Kane or Leonard Doherty, at their last known

address listed above.

FILED

JAN 2 2 2009

NEW YO?
COUNTY CLERK'S OFFICE

5)      I deposited these envelopes in a United States Postal Office under the exclusive care and custody of the United States Postal Service within New York Sate. These envelopes did not in any way indicate on the outside thereof, by return address or otherwise that the communication was from an attorney or concerned an action against the recipient.

Curtis Rhoden
License No.: 0871439

Sworn to before me this
21ˢᵗ day of January, 2009

DANNY VARGAS
Notary Public, State of New York
No. 01VA8172354
Qualified in Bronx County
Commission Expires August 6, 2011

ex. A

Tel.  (718) 325-0700
Fax  (718) 325-1301

MEDICAL & REHABILITATION OF NEW YORK

Licensed by The New York State Department of Health
Medicare & Medicaid Approved .

4377 Bronx Blvd, Bronx, NY 10466

Name: _Package Rec'd_

Chart # _1/13/09_

You have an appt. on: _4:30pm_

Mon.  /  Tues.  /  Wed.  /  Thurs.  /  Fri.

At _Eileen Soff_   AM / PM

For: _____



U.S. Postal Service
CERTIFIED MAIL RECEIPT
(Domestic Mail Only; No Insurance Coverage Provided)

OFFICIAL USE

| | |
|---|---|
| Postage | 480 |
| Certified Fee | 270 |
| Return Receipt Fee (Endorsement Required) | |
| Restricted Delivery Fee (Endorsement Required) | |
| Total Postage & Fees | $ 750 |

Postmark
JAN 15 2009

RJZM LLC
4377 Bronx Boulevard
Bronx, New York 10467
Attn: Michael Kane or Leonard Doherty

188 /88    07

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

TOWNE PARTNERS, LLC,

                                        Plaintiff,

                -against-

RJZM, LLC d/b/a ALL-MED & REHAB OF
NEW YORK

                                        Respondent.

## AFFIDAVIT OF SERVICE

### KUCKER & BRUH, LLP

Attorneys for

#### PLAINTIFF

747 THIRD AVENUE,
NEW YORK, NEW YORK 10017
(212) 869-5030

*Please refer all communications to:*                          *Esq.*

*Pursuant to 22 NYCRR 130-1.1-a, the undersigned, an attorney admitted to practice in the courts of New York State, certifies that, upon information and belief and reasonable inquiry, (1) the contentions contained in the annexed document are not frivolous and that (2) if the annexed document is an initiating pleading, (i) the matter was not obtained through illegal conduct, or that if it was, the attorney or other persons responsible for the illegal conduct are not participating in the matter or sharing in any fee earned therefrom and that (ii) if the matter involves potential claims for personal injury or wrongful death, the matter was not obtained in violation of 22 NYCRR 1200.41-a.*

Dated:_____        Signature_____

                              Print Signer's Name_____

*Service of a copy of the within*                          *is hereby admitted.*

Dated:

                              *Attorney(s) for*

## PLEASE TAKE NOTICE

☐        that the within is a (certified) true copy of a
NOTICE OF   entered in the office of the clerk of the within-named Court on                          20
ENTRY

☐        that an Order of which the within is a true copy will be presented for settlement to the
NOTICE OF   Hon.                          one of the judges of the within-named Court,
SETTLEMENT   at
            on                          20        , at                          M.

Dated:

                              ### KUCKER & BRUH, LLP

                              *Attorneys for*

                              747 THIRD AVENUE
To:                           NEW YORK, NEW YORK 10017

Attorney(s) for

# EXHIBIT 3

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK
-------------------------------------------------------------------x

TOWNE PARTNERS, LLC.

Index No.: 100108/09

Plaintiff,

STIPULATION EXTENDING
TIME TO ANSWER

-against-

RJZM, LLC d/b/a ALL MED & REHAB OF
NEW YORK,

Defendant
-------------------------------------------------------------------x

The parties hereto, through their counsel, herein stipulate and agree that defendant's time

to answer, or move against the Complaint herein be extended to February 13, 2009.

IT IS FURTHER STIPULATED AND AGREED that a facsimile signature on this

Stipulation shall have the effect of an original signature.

Dated: New York, New York
January 30, 2009

Anthony J. Costantini
Duane Morris LLP
1540 Broadway
New York, NY 10036-4086
(212) 692-1000
*Counsel for Defendant*

Abner T. Zelman
Kucker & Bruh, LLP
747 Third Avenue – Suite 12A
New York, New York 10017
(212) 869-5030
*Counsel for Plaintiff*

Index No.: 100108/09

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

TOWNE PARTNERS, LLC.

                                    Plaintiff,

                    -against-

RJZM, LLC d/b/a ALL MED & REHAB OF
NEW YORK,

                                    Defendant.

### STIPULATION EXTENDING TIME
### TO ANSWER

DUANE MORRIS LLP
1540 Broadway
New York, New York 10036-4086
(212) 692-1000
*Attorneys for Defendant*

# EXHIBIT 4

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK
------------------------------------------------------------x

TOWNE PARTNERS, LLC.

               Plaintiff,

-against-

RJZM, LLC d/b/a ALL MED & REHAB OF
NEW YORK,

             Defendant
------------------------------------------------------------x

Index No.: 100108/09

NEW YORK
STIPULATION EXTENDING COUNTY CLERK'S OFFICE
TIME TO ANSWER

FEB 1 3 2009

NOT COMPARED
WITH COPY FILED

The parties hereto, through their counsel, herein stipulate and agree that defendant's time

to answer, or move against the Complaint herein be extended to February 20, 2009.

IT IS FURTHER STIPULATED AND AGREED that a facsimile signature on this

Stipulation shall have the effect of an original signature.

Dated: New York, New York
       February 11, 2009

Anthony J. Costantini
Duane Morris LLP
1540 Broadway
New York, NY 10036-4086
(212) 692-1000
*Counsel for Defendant*

Abner T. Zelman
Kucker & Bruh, LLP
747 Third Avenue – Suite 12A
New York, New York 10017
(212) 869-5030
*Counsel for Plaintiff*

Index No.: 100108/09

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

TOWNE PARTNERS, LLC.

                              Plaintiff,

            -against-

RJZM, LLC d/b/a ALL MED & REHAB OF
NEW YORK,

                              Defendant.

### STIPULATION EXTENDING TIME
### TO ANSWER

**DUANE MORRIS LLP**
1540 Broadway
New York, New York 10036-4086
(212) 692-1000
*Attorneys for Defendant*

# EXHIBIT 5

Minutes

## Giampietro, Grace

From:       McLean, Onika D.
Sent:       Thursday, February 19, 2009 10:55 AM
To:         Giampietro, Grace
Subject: Emailing: CCMinutes.htm

INDEX NUMBER : 100105-2009 COULD NOT BE
FOUND IN THE CCIS DATABASE. THIS INDEX
NUMBER MAY HAVE BEEN ASSIGNED BY THE
COUNTY CLERK. HOWEVER, AS OF TODAY NO RUN
HAS BEEN FILED. CHECK THE "COUNTY CLERK
INFORMATION" SECTION BELOW FOR ANY
AVAILABLE INFORMATION.

Home / SCROLL / COUNTY CLERK MINUTES

| DATE | DOCUMENT TYPE |
|------|---------------|
| 01-06-2009 | SUMMONS AND COMPLAINT |
| 01-22-2009 | AFFIDAVIT OF SERVICE |
| 02-03-2009 | STIPULATION EXTENDING TIME TO ANSWER |
| 02-13-2009 | STIPULATION EXTENDING TIME TO ANSWER |

COUNTY CLERK MINUTES: The minutes of the County Clerk in chronological order reflecting all documents filed with the
County Clerk. Motion papers are are filed with the order therein and are not separately identified.

BACK |   NEW SEARCH

2/19/2009

Minutes

2/19/2009

Please consider the environment before printing this email.

60 Centre Street, New York NY 10007
Copyright © 2006 Unified Court System

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------X
                                                  :
TOWNE PARTNERS, LLC,                              :
                                                  :      Civil Action No.
                          Plaintiff,              :
                                                  :
             -against-                            :
                                                  :
RJZM, LLC d/b/a ALL-MED & REHAB OF                :
NEW YORK,                                         :
                                                  :
                          Defendant.              :
                                                  :
-----------------------------------------------------------X

STATE OF NEW YORK      )
                       :ss.:
COUNTY OF NEW YORK  )

        SPENSYR ANN KREBSBACH, being duly sworn, deposes and says:

        1.      I am employed by the firm of Duane Morris LLP.

        2.      I am over 18 years of age, reside in Brooklyn, New York and am not a party to

this action.

        3.      On February 19, 2009, I caused to be served a true and correct copy of the

Defendant's Notice of Removal, by first-class mail, postage prepaid upon the following counsel

of record:

        Abner T. Zelman, Esq.
        Kucker & Bruh, LLP,
        747 Third Avenue
        New York, NY 10017

                                                   Spensyr Ann Krebsbach

Sworn to before me this
19th day of February, 2009

Notary Public

Daale-Ritterbusch, Laurie
Notary Public, State of New York
No. 01DE0144101
Qualified in Westchester County
Commision Expires April 24,20_10_